[Filed October 25, 1888.]

STRODE, RESPONDENT, *v.* WASHER ET AL., APPELLANTS.

TAXATION — VALIDITY — CONCLUSIVENESS OF TAX DEED. — In an action to determine the title to certain realty claimed under a tax deed, evidence tending to show that the assessment claimed to have been made was void, in that the property in dispute had been assessed with other property not owned by the defendants, and the value of all fixed at a gross sum, was excluded: *held*, error, even under a statute making a tax deed evidence of the *regularity* of an assessment.

CONSTITUTIONAL LAW — IMPAIRING OBLIGATION OF CONTRACTS. — Miscellaneous Laws of Oregon, chapter 57, section 90, which provides that a tax deed shall be conclusive evidence of the regularity of the levy, assessment, collection of taxes, and sale of the property, was amended in 1887 so as to destroy the conclusive effect of the tax deed in these several proceedings: *held*, this amendment does not impair the obligation of contracts as to purchases made prior to the amendment, but simply changes the rule of evidence.

APPEAL from Circuit Court, Multnomah County.

Action by V. K. Strode against Henry Washer *et al.*, to recover possession of certain lands claimed under a tax deed. Judgment for plaintiff, and defendants appeal.

*George H. Durham* and *F. A. E. Starr*, for Appellants.

*W. Scott Beebe* and *Strode & Beach*, for Respondent.

THAYER, J.—The respondent commenced an action in said circuit court against the appellants to recover the possession of lots 7 and 8, block 130, in Carruthers's Addition to the city of Portland, alleging that he was the owner thereof in fee. The appellants denied his ownership, and claimed the ownership of the lots to be in the appellant, Dora Washer, in fee. The main issue in the case is as to the validity of a certain tax deed under which the respondent claims.

It appears that Thomas A. Jordan, sheriff of said county of Multnomah, on the fourteenth day of December, 1886, executed to one J. E. Bennett a deed to the lots under a sale thereof claimed to have been made by Jordan's predecessor to Bennett for the non-payment of taxes, and that Bennett conveyed them to the respondent. The tax deed contains the usual recitals. The taxes are claimed to have been for the year 1883, and the sale made on the eighteenth day of June, 1884.

The complaint in the action was filed March 17, 1887. The appellants set up in their answer, in addition to the matters referred to, the respondent's pretended source of title to the lots, and that his claim thereto was illegal and void on account of fraud and irregularities in the assessment upon which the sale was based, and in the sale itself, and tendered and brought into court the amount of taxes admitted to be due, the cost of sale, the twenty per cent

interest thereon, and the fee for making certificate, in accordance with the act of the legislative assembly of the state, of date, February 21, 1887, amending section 90, chapter 57, Miscellaneous Laws, which provided the effect of a deed upon the sale of real property for the payment of taxes after a failure to redeem the same.

The respondent, after introducing said deeds, rested, and thereupon the appellants offered to show, by the assessment roll of said county for said year of 1883, that said lots were not assessed for taxes for that year to either the owner or occupant thereof, nor described, nor the value thereof set down in the assessment roll, in a part thereof separate from the other assessments, and for the purpose of showing said matters offered the tax roll of said county, of which a copy is appended to the bill of exceptions. The respondent's counsel objected to the evidence, for the reason that it was immaterial and incompetent, and the court sustained the objection, and the appellants' counsel saved an exception to the ruling. Said counsel made several other offers of evidence to the same effect, which were also objected to and excluded by the court, to which exceptions were saved.

The copy of the "tax roll" appended to the bill of exceptions contains the usual headings of an assessment roll. Under the name "Unknown owners, P. Carruthers's Add.," appears, under the heading "Number of lots," the following figures, "5, 6, 7, 8"; and under the heading "Blocks" appears in figures, "130"; and under the heading "Value of all city or town lots" appears in figures, "600."

The appellants' counsel in one of the offers offered to show that two of said lots, 5 and 6, did not belong to said appellant at any time, and that the appellants, nor either of them, claimed any interest in the same.

It appears that the respondent's counsel maintained

the view that the tax deed could not be impeached except by proof, as provided by said section 90, chapter 57, Miscellaneous Laws, and the court sustained that view.

It was claimed by the appellants' counsel that the delinquent tax list was defective, and that the warrant for the collection of taxes was invalid, and the notice of sale wholly insufficient. But the respondent's counsel contends that none of the defects claimed affect the validity of the tax deed; that the statute in force at the time of the sale of lots afforded a presumption in favor of the regularity of the deed which could not be disputed by proof of any of the matters complained of; and that the amendment of said section 90, and consequent repeal of its provisions relating to the conclusive effect of the deed, could not affect the right of the respondent under it without impairing the obligation of contracts.

Statutes of the nature of the one above referred to have been upheld in many instances by courts of the highest standing; still I am not aware of any case in which a court has decided, where a tax sale was void, — where the proceedings were an absolute nullity, — that the deed could not be impeached by showing such defect, although the proof was not of the character specified in the statute authorizing the proceedings to be disputed and avoided.

It would doubtless be a wholesome and safe rule to establish that the legislature has power to declare that a neglect to perform any act relating to the assessment and collection of taxes that it had the right to dispense with in the outset should not defeat a sale of the property for non-payment thereof; but to attempt to dispense with the assessment of the property or levy of the tax, and allow an enforcement of a pretended tax, would be sanctioning an arbitrary exaction. It would not be a tax levied in pursuance of law as provided, in effect, by the constitution of the state.

I think, therefore, that at least the invalidity of the assessment and levy are always open to inquiry in an action relating to the title to the property claimed under a tax deed, and that a statutory enactment precluding such inquiry would be a nullity.

The assessment is the foundation of the right to make the levy. The county court has no jurisdiction to make a levy unless there has been an assessment. The equality and uniformity of taxation required by the constitution could not otherwise be maintained.

The view here expressed seems to be sanctioned in *Sharpleigh* v. *Surdam*, 1 Flip. 472, as coming within the spirit of the statute itself. The learned judge, at pages 486, 487, says:—

The statute demands some proceedings before it can have any possible application. They must be colorable, embodying a fair and honest attempt to afford the delinquent citizen the opportunity the statute contemplates to perform his public duty. There must always be a colorable proceeding in which irregularities may occur. Without this, the exigency in which the law is to have force does not occur. Thus treated (as every court intelligent upon this subject would treat it), it is but what, in modern times, is wholly a commonplace enactment. It says "if the land is subject to taxation, if a tax was in fact assessed, so as to give a citizen an opportunity to pay it, and he neglects it, and a colorable attempt, free from all fraud and unfairness, has been made by public officers to sell his land to collect what he has been delinquent in paying, that mere irregularities shall not defeat the title."

*Legality of the Assessment.* — In the case under consideration, there seems to have been an attempt to assess the property, but it was wholly futile. It did not give the owner an opportunity to pay the tax; did not furnish any basis

by which the amount assessed upon the property could be ascertained. Grouping the lots with other lots not belonging to the appellant, and fixing the valuation of the whole in a gross sum, was not an assessment.

If the lots had all belonged to the said appellant, the assessor would have had no right to value them in that way. The law requires that the assessor shall set down in the assessment roll, in separate columns, "a description of each tract or parcel of land to be taxed, specifying under separate heads, the township," etc., "or if divided into lots and blocks, then the number of the lot and block," and shall set down, etc., "the full cash value of each parcel of land taxed." (Miscellaneous Laws, sec. 29, subd. 4, c. 57.) The owner has a right to know what each of his lots, when his land in a city, village, or town has been platted into lots, has been valued at; but it is much less important in such case than where his lots are included with those belonging to another. In the latter case, he has no means whatever to determine the amount of tax he is required to pay; that such an attempted assessment, under the circumstances of this case, is a nullity, there cannot, it seems to me, be any doubt. The authorities in *Terrill* v. *Groves*, 18 Cal. 149, *Howe* v. *People*, 86 Ill. 290, *Hamilton* v. *City of Fond du Lac*, 25 Wis. 494, *Wiley* v. *Scoville's Lessees*, 9 Ohio, 43, and in Cooley on Taxation, 400, cited by the appellant's counsel, fully sustain that view, and it is supported upon reason and principle. If this conclusion as to the validity of the assessment is correct, there is no need of considering the questions arising out of the proceedings to enforce the payment of the tax. They fall by their own weight. There is nothing to support them, and the determination of the question of their irregularity or invalidity arising out of their alleged inherent defects is not necessary to the decision of the case.

*Construction of Act of 1887, Amending Section 90, Chapter 57, Miscellaneous Laws.* — The question as to the effect of the amendment of said section 90, chapter 57, Miscellaneous Laws, is, however, important, in order to determine whether or not the respondent is entitled to the benefit of the said tender. The power of the legislature to repeal a statute, and thereby cut off all inchoate rights derived from it, except so far as restricted by the federal and state constitutions, is undoubted. The repeal obliterates the statute as completely as though it had never been passed. A right which has been so perfected as to enable it to stand independent of the statute remains unaffected by the repeal. But rights which are executory merely are lost, unless preserved by a saving clause. (*Butler* v. *Palmer*, 1 Hill, 324.) The amendment of said section 90, and consequent repeal of certain of its provisions, as before mentioned, destroyed the conclusive effect of a tax deed as evidence of the regularity of the levy, assessment, collection of the taxes, and the sale of the property in any case. It no longer confines the right to dispute or avoid the presumption of the regularity of those proceedings to the cases specified in said section, — viz., fraud in the assessment or collection of tax; payment of the tax before sale, or redemption after the sale, and the payment or redemption was prevented by the fraud of the purchaser; that the property at the time of the sale was not liable; and that no part of the tax was levied or assessed upon the property sold, — but allows it to be disputed and avoided in any case in which the law would adjudge an irregularity sufficient to render the proceedings a nullity.

The proceedings referred to are presumed to be regular in both cases, but, in the former case, the presumption cannot be overcome except by proving the specific matters above set out, while in the latter it may be overcome by proving any matters sufficient for that purpose. To the

extent here indicated, the former statute is repealed by the later one; and if the amendment is construed as applicable to cases where the sale has been made and the deed executed prior to its adoption, and that would have the effect to impair the obligation of a contract, it would, so far, be void.

It must be conceded that, if there were no statute creating a presumption in such cases, the holder of a tax deed could establish no title to the premises by virtue thereof, without proof that every requirement of the statute, concerning the assessment of the tax and enforcement of its payment, had been complied with. He is entitled to the benefit of the presumption, because the legislature, on account of public policy, has said he should be. No one would contend that the common law would recognize the acquisition of title to property, under statutory proceedings, until it was proved that they were duly had. The owner could not be divested of title, in such a case, without a strict compliance with the terms of the statute; and proof of such compliance would have been essential to establish that a change of ownership had been effected. The question is, whether, after a statute has been enacted shifting the *onus* of such proof, it can be repealed or changed so as to affect the rights of a purchaser at a tax sale, where the tax was levied, the sale made, and the deed executed during the life of the statute, without destroying vested rights in property.

This identical question in principle was determined in *Smith* v. *Cleveland,* 17 Wis. 573. There a similar statute was repealed by the legislature, saving acts done or rights accrued or established, and providing that every such act or right should remain as valid and effectual as if the provision so repealed had remained in full force. Subsequently the legislature passed another act, in which it was declared that any deed executed prior to its passage, upon

the sale of any land for the non-payment of taxes, should be *prima facie* evidence only of the regularity of all proceedings requisite to the legal and effectual execution thereof, from the valuation of the land by the assessor to the execution of such deed. The court there held that the latter statute was invalid as impairing the obligation of a contract.

But in *Hickox* v. *Tallman*, 38 Barb. 608, a similar case, it was held that a grantee in such a deed had no vested right to the benefit of the presumptions in respect to the regularity of the sale, and all the proceedings prior thereto, authorized by the statute to be drawn in his favor; that it was competent for the legislature to change the burden of proof, in a given case, from one party, and cast it upon another, no rule of evidence at common law being changed; and this holding is approved in *Howard* v. *Moot*, 64 N. Y. 262.

I am inclined to be skeptical upon the point that the repeal or change of said provision of statute operated to impair the obligations of the contract of purchase at the tax sale. I do not clearly comprehend that the obligations in favor of a purchaser can be, arising out of a sale *in invitum*, beyond the right to obtain the interest of the owner in the thing purchased when the requisite steps authorizing the sale have been taken.

I am aware that certain officers of the law are invested with power, in certain cases, to sell and transfer the interest of a party in property against the will of such party, and that a rightful exercise of the power will operate to divest the title to the property out of the party, and vest it in the purchaser. But the person to be despoiled of his property in such a case does not undertake that the power will be properly exercised, nor does the officer who executes the deed. The purchaser must take the risk of that himself. The former is resistant. He says: "You

have the right to deprive me of my property against my will, provided you pursue the power conferred upon you strictly; otherwise, you are a wrong-doer." That is the attitude he occupies, and I am unable to discover any obligation the purchaser in such case can claim the benefit of further than I have suggested,—the right to the property in case the power has been duly executed.

The legislature of the state at one time deemed it wise and judicious to declare that upon the delivery of a tax deed the proceedings required or directed by law in relation to the levy, etc., should be presumed regular, and to have been had and done in accordance with law, and that such deed should be *prima facie* evidence of title in the grantee, "and that such presumption and such *prima facie* evidence should not be disputed or avoided except by proof" of the four several matters before enumerated. Such became the law, and it was doubtless an advantage to purchasers of tax titles. It did not undertake to dispense with any of the requirements of the law necessary to the validity of the sale of the property for the non-payment of the tax; but by changing the *onus* to the party whose property was sought to be sequestered, and requiring him to establish the irregularity of the proceedings, if he desired to avoid their effect, and limit the inquiry to certain matters, it often enabled the purchaser to hold the property, whether he was lawfully entitled to it or not. This is the vested right of property in the purchaser, it seems to me, which is contended for.

What obligation there is in favor of the purchaser to maintain such a rule of evidence is more than I can conceive. He is deprived of no legitimate right in consequence of the change. If the power has been duly exercised, his title to the property is assured; if, on the other hand, the conditions upon which it was authorized to be exercised have not been performed, he has no right to it.

The change in the law has removed a barrier the legislature interposed against a full inquiry into the matter, and I do not think it has the effect to impair the obligation of any contract, although it has modified the former rule of evidence upon the subject. It follows from this view that the judgment appealed from must be reversed, and the case remanded for a new trial.

LORD, C. J., expresses no opinion upon the second question considered herein.

## PETITION FOR REHEARING.
[Filed March 6, 1888.]

Per CURIAM.—We have considered with some care the petition for rehearing herein, and are constrained to adhere to the opinion we have before expressed. We are satisfied that the offer made at the trial to show that the lots in question were included with two other lots in the attempted assessment should have been allowed, and that if such proof were made, the assessment should be deemed a nullity. Several lots of land belonging to different owners cannot legally be assessed to one of them, and the value of all fixed at a gross sum. What the effect would be where the lots so assessed all belong to the same party, we express no opinion.

Upon the question of the construction of the act of 1887, amending section 90, chapter 57, Miscellaneous Laws, our former views remain the same, although we are conscious that the question approaches very near the dividing line between the remedy and the obligation of contracts. We have been unable, however, to discover any authority convincing us that the amendment operates further than to change a rule of evidence which the legislature has at all times full power to effect without impairing the obligation of contracts. (Cooley on Constitutional Limitations, sec. 451.)

The petition will therefore be denied.