Argued 10 October, decided 17 December, 1907.

## STATE *v.* KLINE.

93 Pac. 237.

CRIMINAL LAW—CHANGE OF VENUE—AFFIDAVITS—NECESSITY—STATUTORY PROVISIONS.

1. Under Section 1250, B. & C. Comp., providing that in an action for a felony, where the cause is at issue upon a question of fact, the court may order the place of trial to be changed, when it appears by affidavit, to the satisfaction of the court, that a fair and impartial trial cannot be had in the county, etc., a motion for a change of venue in an action for a felony, when a transfer of the cause is objected to, raises an issue which must be determined by the court from an inspection of affidavits.

SAME—APPEAL—RECORD—BILL OF EXCEPTIONS—CONTENTS.

2. Affidavits for a change of venue must be incorporated in a bill of exceptions and transmitted to the Supreme Court, in order to have the action of the trial court reviewed on appeal, if such action is assigned as error, and where such affidavits are merely certified by the clerk, it does not make them a part of the bill of exceptions, and alleged error in refusing to grant a change cannot be considered.

SEPARATE TRIAL OF DEFENDANTS—MISDEMEANOR—REVIEW OF COURT'S DISCRETION.

3. Under Section 1395, B. & C. Comp., providing that when two or more defendants are jointly indicted for a felony, any defendant requesting it must be tried separately, but that in other cases defendants jointly indicted may be tried separately or jointly, in the discretion of the court, refusal on appeal from justice's court to grant separate trials to persons charged with a misdemeanor, will not be held error, when the bill of exceptions does not show that the court abused its discretion.

STATUTES—VETO POWER—ABSENCE OF CONSTITUTIONAL PROVISIONS.

4. In a democratic form of government, the authority of an executive to veto an enactment of the legislative department, is not an inherent power, and can be exercised only when sanctioned by a constitutional provision.

SAME—ENACTMENT—APPROVAL—CONSTITUTIONAL PROVISIONS.

5. The amendment of Section 1, Article IV, of the Constitution of Oregon (B. & C. Comp. p. 72), reserves to the people the initiative, the right to propose laws and amendments to the Constitution, and to enact or reject them at the polls, and the referendum, the right to approve or reject at the polls any act of the legislative assembly, and provides that the referendum may be ordered by petition or the legislative assembly; also that the veto power of the Governor shall not extend to measures referred to the people. Const. Oregon, Art. V, § 15, provides that every bill which shall have passed the legislative assembly, shall be presented to the Governor for his approval before it becomes a law. *Held,* that a law proposed by petition and enacted by the people under the initiative, need not be approved by the Governor.

CRIMINAL LAW—EVIDENCE—"PRIMA FACIE EVIDENCE" DEFINED.

6. "Prima facie evidence" is that degree of proof which, unexplained or uncontradicted, is by itself sufficient to establish the truth of a legal principle asserted by a party.

INTOXICATING LIQUORS—CRIMINAL PROSECUTIONS—ADMISSIBILITY OF EVIDENCE.

7. Under the local option law (Laws 1905, p. 47, § 10), providing that the order of the county court declaring the result of a local option election shall be held

to be *prima facie* evidence that all the provisions of the law have been complied with in giving notice, etc., the order of the county court is admissible in a criminal prosecution for violating that law, without introducing the petition, notices, etc., but the burden is on the accused to overcome such *prima facie* proof.

> CONSTITUTIONAL LAW—IMPAIRMENT OF VESTED RIGHTS—BURDEN OF PROOF—STATUTORY CRIMES.

8. The rule which imposes upon the defendant the burden of proof in a prosecution for a statutory crime does not violate any vested right which he possesses.

> CRIMINAL LAW—APPEAL RECORD—BILL OF EXCEPTIONS—MATTERS NOT INCLUDED.

9. Documentary evidence which is not made a part of the bill of exceptions cannot be considered on appeal.

> SAME—REVIEW—NECESSITY FOR PRESENTATION OF QUESTIONS IN TRIAL COURT.

10. The only questions brought up for review on appeal in a law action, are such as have been properly submitted to and considered by the trial court.

> SAME—PRESUMPTIONS—NOTICE TO PRODUCE ORIGINAL DOCUMENT.

11. B. & C. Comp., § 703, subd. 1, provides that secondary evidence of the contents of a writing may be given when the original is in the possession of the party against whom it is offered, and he withholds it after receiving reasonable notice to produce it, as required by section 771. A bill of exceptions on appeal in a prosecution for violating the local option law, showed that an internal revenue license was issued to defendants, and was in their possession, but it was not made to appear that any notice to produce it had been given to them. The only objection to parol proof of the contents of the license was that it was incompetent, immaterial, irrelevant, and not the best evidence. *Held*, that as want of notice was not suggested, it must be presumed in favor of the judgment rendered, that testimony as to the demand to produce the license was duly given.

> SAME—ADMISSION OF MANUSCRIPT—ABSENCE FROM RECORD.

12. Where a manuscript sent up with a package of papers on appeal is not made a part of the bill of exceptions nor properly identified, it must be presumed that no error was committed in admitting it in evidence.

> SAME—MATTERS NOT OF RECORD—BILL OF EXCEPTIONS.

13. Where the bill of exceptions on an appeal from a conviction for violation of the local option law referred to a writing in the following terms: "Defendants offered in evidence articles of incorporation of the Corvallis Social & Athletic Club (marked 'Defendants' Exhibit D'), as follows: (Clerk print)"—and that was the only reference to the document, and the direction to print was not obeyed, though the articles of incorporation may have been included in a package of papers certified to by the clerk, it was not a part of the bill of exceptions, and when not identified by the trial judge, it cannot be considered on appeal.

> INTOXICATING LIQUORS—CRIMINAL PROSECUTIONS—SALE—INCORPORATED CLUB.

14. Under the local option law (Laws 1905, p. 48, § 15), forbidding under penalty any person in prohibition territory to sell, exchange, or give away, with intent to evade the provisions of the law, any intoxicating liquors whatsoever, where intoxicating liquors are purchased by an incorporated society, and sold or distributed to the members at approximate cost, the act constituted a sale.

INFORMATION—WAIVER OF DEFECTS—DUPLICITY—FAILURE TO DEMUR.

15. Where a complaint charged defendants with selling "and" giving away intoxicating liquors with intent to evade the law, a failure to demur on the ground of duplicity in the specification of the charge, was a waiver of any defect on that account.

INTOXICATING LIQUORS — OFFENSES — SALES — STATUTORY PROVISIONS — EXCEPTIONS—SOCIAL CLUBS.

16. The local option law, section 2 (Laws 1905, p. 42), provides that the inhibition of the sale of intoxicating liquors, when effectuated, shall not prohibit the sale of certain liquors for certain excepted purposes, but no reference is made therein to clubs. *Held,* that when the prohibition law became operative in a certain county, it *ex proprio vigore* inhibited all social clubs within the county from selling or giving to members thereof, intoxicating liquors with a purpose of evading the law.

CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER — LOCAL OPTION LAW.

17. The local option law (Laws 1905, p. 41) is not unconstitutional as a delegation of legislative power, since the power to enact a law is not delegated, but authority was merely conferred upon the people of the counties to determine by a majority vote, whether a law already passed for the entire State shall be applicable to such county, since it is the majority vote of the electors, and not the order of the county court, that effects the result, and the sale is forbidden by operation of the law.

INTOXICATING LIQUORS—CRIMINAL PROSECUTIONS—INSTRUCTIONS.

18. In a prosecution for violation of the local option law, where B., a witness, testified that at about the time stated in the complaint, he went into a building formerly operated as a saloon, and there talked with one of the defendants; that at the time he obtained a half pint of brandy, for which he offered to pay, but that the accused told him that an assessment would subsequently be made for the expense of the Corvallis Social and Athletic Club; that he thereafter paid an assessment of 40 cents; that he had not in the meantime procured any other goods at that place; that the sum paid was more than the ordinary price of such liquor, and that he thought the assessment imposed upon him included his right to visit the clubrooms—it was not error to instruct, that if the club was the owner of, or kept intoxicating liquor, which was sold or given to B. for the purpose of evading the local option law, and that defendants, or either of them, aided or authorized such sale or gift with such intent, the averments in the complaint were sufficiently established, for the use of the expression "sale or gift" was proper to dispel any doubt as to the nature of the disposal of the liquor under the circumstances mentioned.

SAME—EVIDENCE—INTERNAL REVENUE LICENSE—STATUTORY PROVISIONS —"PERSON."

19. The local option law, section 18 (Laws 1905, p. 50), provides that the issuing of a license or internal revenue special tax stamp by the Federal government to any person for the sale of intoxicating liquors shall be *prima facie* evidence that such person is selling, exchanging, or giving away intoxicating liquors. *Held,* that the term "person," as used, includes the word "corporation"; hence it was not error to instruct that if an internal revenue license had been issued to a certain club authorizing the sale of intoxicating liquor, such license was *prima facie* evidence that the club was engaged in selling, exchanging, or giving away intoxicating liquors, but that such finding alone would not be applicable to the defendants, or either of them.

From Benton: LAWRENCE T. HARRIS, Judge.

The defendant was convicted of violating the local option law, and from the judgment rendered thereon he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Weatherford & Wyatt,* with an oral argument by *Mr. James R. Wyatt.*

For the State there was a brief over the names of *George M. Brown,* District Attorney, and *E. R. Bryson* and *W. S. McFadden,* with an oral argument by *Mr. Bryson.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendants, Charles M. Kline and Merwin McMaines, were jointly convicted in a justice's court of Benton County of the crime of selling and giving away intoxicating liquor with a purpose of evading the provisions of the local option law of Oregon, alleged to have been committed in that county, August 18, 1905, by then and there unlawfully selling and giving away, with such intent, intoxicating liquor to one Thomas Bell, at which time the sale of that kind of drink had been prohibited in the entire municipality, stating when and how the interdiction was effected, and further averring that the law was then and there in full force and effect. The defendants appealed from the sentences imposed upon them to the circuit court for that county, where the cause was tried anew, and McMaines acquitted; but Kline was convicted, and, from the judgment which followed, he appeals to this court.

1. It is contended by his counsel that an error was committed in refusing to grant a change of venue. To secure a transfer of the cause to another county for trial, the defendant interposed a motion which states that it was based on affidavits filed therewith. A number of affidavits, newspaper clippings and other papers were fastened together and sent up to this court, but they are not made a part of the bill of exceptions or identified in any manner by the trial judge. A motion to secure a change of venue in an action for a felony, when a transfer of the cause is objected to, raises an issue which must be determined by the court from an inspection of affidavits: B. & C. Comp. § 1250.

2. These written declarations under oath constitute the proof, which, like all other evidence, must be incorporated in a bill of exceptions and transmitted to this court, in order that the action of the trial court may be reviewed on appeal, if assigned as error. The affidavits referred to, though certified by the clerk, do not make them a part of the bill of exceptions, and hence the question suggested, even if the crime charged were a felony, is not before us for consideration: *State* v. *Clements,* 15 Or. 237 (14 Pac. 410) ; *Roberts* v. *Parrish,* 17 Or. 583 (22 Pac. 136) ; *Craft* v. *Dalles City,* 21 Or. 53 (27 Pac. 163) ; *Fisher* v. *Kelly,* 26 Or. 249 (38 Pac. 67) ; *Farrell* v. *Oregon Gold Co.* 31 Or. 463 (49 Pac. 876) ; *Nosler* v. *Coos Bay Navigation Co.* 40 Or. 305 (63 Pac. 1050, 64 Pac. 855) ; *Multnomah County* v. *Willamette Towing Co.* 49 Or. 204 (89 Pac. 389).

3. It is also maintained that the court erred in denying the defendants' motion to grant separate trials. When two or more persons are jointly charged with the commission of a felony, any defendant requiring it must be tried separately, but in all other cases the granting of a separate trial is a matter of discretion: B. & C. Comp. § 1395. The crime charged in the case at bar is only a misdemeanor, and as the bill of exceptions does not show that the discretion reposed in the trial court was abused, its action in refusing to grant separate trials was not erroneous.

4. It is insisted that the local option liquor law, the provisions of which Kline is charged with having violated, was initiated by a petition and ratified by a vote of the electors of Oregon, but the enactment was not submitted to the Governor for his approval or rejection, and for that reason it never became operative. The amendment of Section 1 of Article IV of the constitution of Oregon (B. & C. Comp. p. 72) contains the following clause: "The veto power of the Governor shall not extend to measures referred to the people." As this amendment provides that the referendum may be ordered either by petition of the electors or by the legislative assembly, it might seem reasonably to be inferred from the limitation of the Governor's authority, that he could annul any measure initiated by

petition. In a democratic form of government, the authority of an executive to set aside an enactment of the legislative department is not an inherent power, and can be exercised only when sanctioned by a constitutional provision. The fundamental laws of Delaware, North Carolina, Ohio and Rhode Island do not confer the veto power on the Governors of those states.

5. In this State, prior to the amendment referred to of the constitution, every bill which passed the legislative assembly was required to be presented to the Governor before it became a law: Const. Or. Article V, Section 15. This provision of the organic act was impliedly changed by the amendment under consideration, so as practically to insert in the original the following parenthetic clause, to-wit:

"Every bill which shall have passed the legislative assembly (except such as may, by order of that body, be referred to the people for their sanction or rejection) shall, before it becomes a law, be presented to the Governor," etc.

The amendment of Section 1 of Article IV of our constitution does not direct that a proposed law, when enacted by the people, pursuant to an exercise of the initiative power reserved, shall, before it becomes operative, be presented to the Governor; and hence the chief executive of this State is powerless either to approve or repudiate a measure passed in the manner indicated. The local option law of Oregon was proposed by initiative petitions, and approved by a majority vote of the electors, June 6, 1904, and took effect 18 days thereafter, conformable to the Governor's proclamation and without his approval.

6. It is urged that an error was committed in admitting the evidence, over objection and exception, a certified copy of the order of the County Court of Benton County, declaring the result of the election, held under the local option law, and absolutely prohibiting the sale of intoxicating liquors within that municipality, without first having introduced in evidence, as a foundation for such prescription, the petition initiating the right to call the election, the notices issued in pursuance of such call and the proof of posting the notices. A clause of the local

option law relating to the action of a county court in declaring the result of an election, held to determine whether or not the sale of intoxicating liquor should be prohibited, is as follows:

"The order thus made shall be held to be *prima facie* evidence that all the provisions of the law have been complied with in giving notice of and holding said election, and in counting and returning the votes and declaring the result thereof": Laws 1905, p. 47, § 10.

*Prima facie* evidence is that degree of proof which, unexplained or uncontradicted, is alone sufficient to establish the truth of a legal principle asserted by a party: 1 Jones Ev. § 7.

7. The provision of the law quoted casts upon a party to a criminal action, who is charged with violating the terms of the local option enactment, the burden of overthrowing such *prima facie* proof, by introducing in evidence the writings which constitute the alleged irregularity of the proceedings, upon which the order of prohibition is primarily based, without which statutory declaration of the character of proof, it would have been incumbent upon the State to establish the validity of the several initiatory steps necessary to the making of an efficacious order declaring the result of the election, and prohibiting the sale of intoxicating liquors in the territory specified: *Strode* v. *Washer,* 17 Or. 50 (16 Pac. 926) ; *Harris* v. *Harsch,* 29 Or. 562 (46 Pac. 141) ; *Brentano* v. *Brentano,* 41 Or. 15 (67 Pac. 922).

8. The rule which imposes upon a defendant the burden of proof in a prosecution for a statutory crime, does not violate any vested right which he possesses: 12 Cyc. 380. The order of the county court was admissible in evidence without introducing the petition, notices or proof of posting such notices: *State* v. *Carmody,* 50 Or. 1 (91 Pac. 446).

9. It is argued, however, that the *prima facie* proof mentioned was overcome by introducing in evidence the sheriff's certificate of the posting of the election notices. In the package of papers referred to upon the question of a change of venue, appears a memorandum, which ·has noted in the margin in lead pencil, "Defendant's Exhibit C." This exhibit purports to be the sheriff's return upon the notice mentioned, but it is not

made a part of the bill of exceptions or certified to in any manner by the trial judge, and for that reason it will not be considered.

10. It is contended that the court erred in admitting, over objection and exception, testimony tending to prove the contents of an internal revenue license, without calling for, or producing, the original or attempting to account for its absence. Secondary evidence of the contents of a writing may be given when the original is in the possession of the party against whom it is offered, and he withholds it (B. & C. Comp. § 703, subd. 1), after having received reasonable notice to produce it: Section 771, B. & C. Comp. The bill of exceptions shows that the license mentioned was issued by the collector of internal revenue, and having been displayed in the defendants' place of business, it was in their possession, but it does not appear that any notice to produce it had been given to them. The contents of the revenue stamp was attempted to be given by three witnesses, whose testimony was challenged by defendants' counsel on the ground that it was incompetent, immaterial and irrelevant, and not the best evidence. It will thus be seen that the objections interposed to such testimony do not negative the implication that the defendants had received reasonable notice to produce the license. The only questions brought up for review in a law action are such as have been properly submitted to, and considered by, the trial court; and, as the want of notice was not suggested, it must be presumed, in favor of the judgment rendered, that testimony in relation to the demand to produce the license was duly given.

11. R. Turney, as a witness for the State, testified that in August, 1905, as manager of the Corvallis Gazette, he printed in that newspaper office a letterhead, the manuscript for which; he believed, was prepared by the defendant McMaines; and, producing the writing, it was received in evidence as "State's Exhibit B," over an objection that it was incompetent, immaterial and irrelevant; that the witness had not shown himself competent to testify; and that the writing had not been identi-

50 OR. ——28

fied as that of McMaines. This witness, on cross-examination, having testified that he did not remember having ever seen McMaines write, the testimony in relation to the manuscript was sought to be stricken out, for the reasons hereinbefore suggested, as to the declarations under oath of this witness, but the motion was denied and an exception saved.

12. In the package of papers adverted to appears what is marked "State's Exhibit B," but as the manuscript thus indicated is not made a part of the bill of exceptions, or properly identified, it must be presumed that no error was committed in admitting it.

13. The following excerpt is taken from the bill of exceptions, and contains the entire reference to the writing mentioned, to-wit: "Defendants offered in evidence articles of incorporation of the Corvallis Social & Athletic Club (marked 'Defendants' Exhibit D'), as follows: (Clerk print.)" This direction was not obeyed, and the articles of incorporation, though probably included in the package of papers mentioned, are not made a part of the bill of exceptions or identified by the trial judge; and, for the reasons hereinbefore given, the charter is not properly before us. Though the manner of conducting the business of the Corvallis Social & Athletic Club is not particularly disclosed by the testimony of any witness, we shall assume, without deciding the question, that the corporation was organized for a *bona fide* purpose, and not with intent to evade the provisions of the local option law, and that disposition of intoxicating liquors kept by it was made to the members of the organization; and, based on such supposition, we will consider whether a transfer of the possession of alcoholic drink by an agent of a corporation to a member thereof is lawful in territory where the local option law is in effect. Though the bill of exceptions, in the case at bar, is silent as to the manner in which the business of the Corvallis Social & Athletic Club was conducted by the defendant, who, at the time stated in the complaint, was an officer of the corporation, the mode pursued is so nearly uniform to that revealed in *Barden* v. *Montana Club,*

10 Mont. 330 (25 Pac. 1042: 11 L. R. A. 593: 24 Am. St. Rep. 27), that a description is taken from a note thereto, as follows:

"In nearly every state in the Union social clubs exist, some of which are incorporated, and others are not, and which are conducted for the use of the members only, to provide for their rational entertainment and amusement, both intellectual and social. They generally transact no business whatsoever for the purpose of making any profit, directly or indirectly, for themselves or their members, and the income derived from various sources is applied solely to defraying the expenses of the organization or incorporation. Their sources of income generally consist of an entrance or membership fee, collected from each new member, and such monthly dues as shall be assessed by the management or board of directors each month, together with money paid by members for what refreshments, liquors and cigars they obtain for their personal use, or that of their especially invited friends, at the clubhouse, and such additional assessments, fines and penalties as may be, from time to time, imposed upon the members. The money thus received is expended in paying the current expenses of the club, and the other enumerated sources of income are seldom sufficient to meet such expenses without the imposition of additional assessments. The spirituous and fermented liquors consumed by the members are bought by the club, and kept therein under charge of a steward or manager, an employee of the club, under the supervision and control of the board of directors. The members of the club, and no other persons, except especially invited guests, can get what liquors they want, by a member calling for them upon the steward and paying a price fixed by the regulation of the club, either at the time, or at the end of each month, or at such other time as such regulations may require. This price for the liquor is fixed and paid, not for the purpose of making any profit, either directly or indirectly, but merely for the purpose of covering the outlay in the purchase thereof by the corporation or organization. The moneys received are used to replenish the stock of liquors so kept for the use of the members, and the expense attendant upon the keeping and serving thereof at the clubhouse, and other expenses of the club."

14. When intoxicating liquors are purchased by an unincorporated social club, to be used in the manner indicated, it is generally conceded that the members of the organization are the joint owners of the general property in all the alcoholic

drinks thus kept; that the officer who, upon a request therefor, dispenses such liquor to members of the club, is their agent, and that the delivery of a quantity of such goods to a member, though for a consideration, whereby a special property is transferred, is not, in the strict sense of the term, a sale, because the element of a bargain is lacking. The people of this State, evidently having knowledge of the manner in which the business of social clubs was usually conducted, and also understanding that the disposal of intoxicating liquor to the members of such organizations might not be construed a sale, apparently intending to prevent such transfers of the special property in alcoholic drinks, as a beverage, adopted section 15 of the local option law, which so far as important herein, is as follows:

"When any such election has been held and has resulted in favor of prohibition, and the county court has made the order declaring the result, and the order of prohibition, any person who shall thereafter, within the prescribed bounds of prohibition, sell, exchange or give away, with a purpose of evading the provisions of this law, any intoxicating liquors whatsoever, or in any way violate the provisions of this law, shall be subject to prosecution," etc.

It would thus seem, from an inspection of the language last quoted, that the section was framed with an intent to prevent the disposal of intoxicating liquors by an unincorporated social club to its members within prohibited territory, even if it were determined that the transfer of the special property in the liquor, by an agent of the organization to a member thereof, constituted only a gift. Where, however, as is assumed in the case at bar, intoxicating liquors are purchased by an incorporated society, to be used, as hereinbefore detailed, it would appear that the corporation is the owner of the liquors, and when they are dispensed to a member, with intent to pass the title in the goods, the act constitutes a sale.

15. It will be remembered that the complaint charges the defendants with selling and giving away intoxicating liquor with a purpose of evading the provisions of the local option law. No demurrer having been interposed by the defendants on the

ground of duplicity in the specification of the charge, any defect in the pleading on that account was thereby waived: *State* v. *Lee,* 33 Or. 506 (56 Pac. 415); *State* v. *Carlson,* 39 Or. 19 (62 Pac. 1116, 1119).

These preliminary matters having been disposed of, a consideration of the principal inquiry on this branch of the case will be resumed. In the note to the case of *Barden* v. *Montana Club,* 24 Am. St. Rep. 27, immediately following the excerpt hereinbefore quoted, the ·editors of that valuable series of case-law make the following observation, as deducible from an examination of adjudications applicable to the inquiry, to-wit:

"The question whether or not the furnishing of intoxicating or fermented liquor by a club to its members in the manner above stated constitutes a sale in violation of laws prohibiting sales, or whether or not it constitutes a sale within the meaning of a law requiring a license before one can engage in retailing such liquor, has been the subject of various and conflicting decisions by a number of the appellate courts of the country. While the cases cannot be reconciled, the current as well as the weight of authority is undoubtedly in favor of the rule that the distribution and consumption of liquors in a club by its members in the manner above stated is a sale, and a violation of laws of the nature stated." .

Several cases are cited, and quotations therefrom are contained in the note that fully sustain the conclusion thus reached, and we adopt that part of such deduction as relates to the disposal of intoxicating liquor by a club to its members in violation of the provisions of a local option law, without further calling attention to the cases relied upon.

16. Section 2 of the local option law provides that the inhibition of the sale of intoxicating liquors, when effectuated, shall not prohibit the sale of pure alcohol for scientific and manufacturing purposes, or wines to church officials for sacramental purposes, nor alcoholic stimulants as medicine in case of actual sickness. The expression of these exceptions necessarily leaves no room for the consideration of any other exclusion; and hence, we conclude, that when the prohibition law became operative in Benton County, it, *ex proprio vigore,* inhibited all social

clubs within that territory from selling or giving to the members of such organizations intoxicating liquors with a purpose of evading the provisions of the enactment.

17. Exceptions having been taken to parts of the court's instructions, it is contended that errors were committed in giving them, to-wit: The court said to the jury, in effect: (1) That if they should find, beyond a reasonable doubt, that the county court of Benton County made an order, at a specified time, declaring the result of an election, and absolutely prohibiting the sale of intoxicating liquors within that territory, such declaration was *prima facie* evidence that all the provisions of the law, relating to giving notice, holding an election, counting and returning the votes cast and declaring the result thereof had been complied with; (2) that if they should find that the Corvallis Social & Athletic Club was the owner of or kept intoxicating liquor which was by some person, other than the defendants, sold or given to Thomas Bell, with a purpose of evading the provisions of the local option law, and that the defendants, or either of them, aided or authorized such sale or gift, with such intent, then the averments of the complaint were sufficiently established; (3) that if they should find that intoxicating liquor was owned by the Corvallis Social & Athletic Club, that such organization was duly incorporated, that the defendants were its agents and that Thomas Bell was a member of the club, then a sale or gift by them, as such agents, to him, with intent to evade the provisions of the local option law, would not exonerate them from liability: (4) that if they should find that an internal revenue license had been issued to the Corvallis Social & Athletic Club, authorizing the sale of intoxicating liquor, such permission afforded *prima facie* evidence that the club was, during the time specified in the tax stamp, engaged in selling, exchanging or giving away intoxicating liquors, but that such finding alone would not be applicable to the defendants or either of them.

Considering these instructions in the order specified, it is argued that the local option law being dependent upon a vote of the people, to determine whether or not it should be operative

within a specified territory, contravenes the organic law of the
State by delegating legislative power, which fact is evidenced
by the order of a county court whereby its mandate, and not
the enactment, becomes the rule of prohibition. The power to
enact a law was not delegated, but authority was conferred
upon the people of Benton County to determine by a majority
vote, whether or not a law, which had already passed for the
entire State, should be applicable to such county: *Fouts* v. *Hood
River,* 46 Or. 492 (81 Pac. 370: 1 L. R. A. (N. S.), 483).

The local option law (section 10) provides that, if a majority
of the votes cast at an election be in favor of inhibition, the
county court shall make an order declaring the result of the
vote, and absolutely prohibiting the sale of intoxicating liquor
within the prescribed limits. It is the majority vote of the
electors in favor of prohibition that effectuates such result, and
though the county court is required to make an order absolutely
prohibiting the sale of intoxicating liquor, such declaration is
only tantamount to a proclamation of the consequences which
follow a canvass of the votes, and thus the sale is forbidden by
operation of law and not by the county court.

18. The bill of exceptions shows that Thomas Bell, as a wit-
ness for the State, testified that, about the time stated in the
complaint, he went into a building at Corvallis, formerly used
as a saloon, and there talked with the defendant Kline; that
at that time he obtained a half pint of brandy which was set
out for him, for which he offered to pay, but Kline told him
that an assessment would subsequently be made for the expense
of the Corvallis Social & Athletic Club; that he thereafter paid
an assessment of 40 cents; that he had not in the meantime
procured any other goods at that place; that the sum so paid
was more than the ordinary price of such liquor, and that he
thought the assessment imposed upon him included his right
to visit the clubrooms.

The "sale or gift" to which the court referred in the second
instruction excepted to was evidently based on the testimony of
Bell, in relation to the method pursued whereby he obtained the
brandy and paid money, not for the intoxicating liquor, possi-

bly, but on account of an assessment to defray the expenses of the club. To dispel any doubt that might possibly arise in the minds of the jurors as to the nature of the disposal of the alcoholic drink, under the circumstances mentioned, the court spoke of the transfer of the property in the brandy as a "sale or a gift," and, in doing so, committed no error. The disposal of intoxicating liquor by a social organization to a member thereof, as indicated in the third exception to the instruction, has heretofore been discussed under the question of the incorporation of the Corvallis Social & Athletic Club, and needs no further elucidation at this time.

19. Section 18 of the local option law contains, *inter alia,* the following clause:

"The issue of a license or internal revenue special tax stamp by the federal government to any person for the sale of intoxicating liquors shall be *prima facie* evidence that such person is selling, exchanging or giving away intoxicating liquors."

The term "person," as used in this provision, is undoubtedly broad enough to include the word "corporation"; and, this being so, the fourth instruction, to the giving of which an exception was reserved, correctly stated the law applicable to the facts involved.

Other exceptions are noted, but believing them immaterial, the judgment is affirmed.　　AFFIRMED.

---

Decided 7 Jan., 1908.