[No. 38863.   En Banc.   September 1, 1966.]

THE STATE OF WASHINGTON, *on the Relation of Effie Mae Lofgren, Plaintiff*, v. A. LUDLOW KRAMER, *as Secretary of State, Respondent.**

*Lane, Powell, Moss & Miller, Raymond W. Haman,* and *John Lackland,* for plaintiff.

*The Attorney General* and *Philip H. Austin, Assistant,* for respondent.

HUNTER, J.—Effie Mae Lofgren, citizen and taxpayer of the state of Washington, brings this action, invoking the original jurisdiction of this court under art. 4, § 4 of the Washington State Constitution, to obtain a writ of mandamus directing the Secretary of State, as chief elections officer of the state, to refrain from placing Referendum Bill No. 16 on the ballot at the next general election.

The challenged referendum bill provides for the reapportionment and redistricting of this state's seven congressional districts. The bill (designated as House Bill No. 714) was passed by a majority of each house during the extraordinary session of the 39th Washington State Legislature. It was signed by the Speaker of the House of Representatives and by the President of the Senate and then filed in the respondent Secretary of State's office without being presented to the Governor for his approval or rejection. Section 10 of the bill provides as follows:

This act shall be submitted to the people for their adoption and ratification, or rejection, at the general election to be held in this state on the Tuesday next succeeding the first Monday in November, 1966 in accordance with

*Reported in 417 P.2d 837.

the provisions of section 1, Article II of the state Constitution, as amended, and the laws adopted to facilitate the operation thereof.

The bill has been designated "Referendum Bill No. 16" by respondent and unless restrained by court order, respondent will cause this bill to appear on the state general election ballot on November 8, 1966.

Relator made demand upon the Attorney General that he commence an action seeking to restrain respondent from performing his duties in preparing Referendum Bill No. 16 for the ballot. The Attorney General refused to bring such action, basing his refusal upon the conclusion of his office that the challenged failure to present the bill to the Governor was constitutional. The relator thereupon commenced this action.

The sole issue in this case is whether the legislature is authorized by art. 2, § 1 of the state constitution to submit a referendum bill to the people of this state at the next general election without first having submitted the bill to the Governor for his approval or rejection. The pertinent constitutional provisions are as follows:

Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature *as other bills are enacted.* (Italics ours.) Const. art. 2, § 1(b).

*The veto power of the governor shall not extend to measures initiated by or referred to the people.* All elections on measures referred to the people of the state shall be had at the biennial regular elections, except when the legislature shall order a special election. *Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon:* . . . . (Italics ours.) Const. art. 2, § 1(d).

VETO POWER. Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor. Const. art. 3, § 12.

Relator contends that the constitutional language requires submission of referendum measures to the Governor before placing them on the ballot; that art. 2, § 1 (adopted as Amendment 7 in 1912) contains no inference that it was intended to derogate from the power of the Governor to approve or reject every act which shall have passed the legislature.

■ We disagree. The language of our constitution does not support relator's argument. Art. 3, § 12 affords the Governor no opportunity to exercise his veto power except within a period of 5 days after a bill's enactment by the legislature and its presentment to the Governor, or within 10 days after general adjournment of the legislature when the adjournment prevents the return of the bill to the legislature within the 5-day period.

It must be assumed that the limitation of the Governor's veto power in art. 2, § 1 (d), *supra,* refers to a period when the Governor is afforded by law an opportunity to exercise this power. Otherwise, art. 2, § 1 (d) would be meaningless. Moreover, under art. 2, § 1 (d), the Governor would have no opportunity to exercise his veto power after a referendum measure receives a majority vote of the people, as this section expressly provides that at that time the referendum measure becomes law.

The only opportunity for the exercise of the veto power of the Governor would be after the enactment of the referendum measure by the legislature and before its submission to the people, within the period provided under art. 3, § 12, *supra.* The limitation of the veto power in art. 2, § 1 (d), *supra,* must therefore apply to that time.

The relator contends, however, that the phrase "as other bills are enacted," in art. 2, § 1 (b), *supra,* requires the submission of such measures to the Governor. She argues that this phrase must be given legal significance and that its only possible purpose is to provide for gubernatorial review of measures submitted to the people by the legislature. We disagree. It is to be noted that the phrase provides "as other *bills* are enacted," and not "as other *laws* are enacted." (Italics ours.) The bill in the present case was

enacted by the legislature, but in this instance will not become law unless approved by the people at the next general election. The constitution has in effect substituted the people in place of the Governor when exercising their right of referendum.

We deem it significant that the supreme courts of two sister states which have very similar constitutional provisions relating to referendum and veto powers, have stated that their initiative and referendum amendments prevent exercise of the gubernatorial veto power before or after referendum measures are submittd to the people by the legislature. *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160 (1956); *State v. Kline,* 50 Ore. 426, 93 Pac. 237 (1907); *Kadderly v. Portland,* 44 Ore. 118, 74 Pac. 710, 75 Pac. 222 (1903). We recognize, as relator points out, that the pertinent judicial statements in these cases are obiter dicta and that this court is in no way bound thereby. Nevertheless, we find these statements and the supporting reasoning to be persuasive. We conclude, as did the Oregon court in the *Kline* case, *supra,* that the original constitutional provision requiring every bill passed by the legislature to be presented to the Governor was impliedly changed by the initiative and referendum amendment under consideration, so as to read:

> "Every bill which shall have passed the legislative assembly (except such as may, by order of that body, be referred to the people for their sanction or rejection) shall, before it becomes a law, be presented to the Governor," . . . . 50 Ore. at 431.

For the reasons heretofore stated, we hold that art. 2, §§ 1(b) and (d) of our state constitution, provides that the legislature need not submit to the Governor bills passed by that body and ordered to be submitted to the people to be voted on at the next general election.

The Secretary of State may properly place Referendum Bill No. 16 on the ballot for submission to the people at the next general election.

The writ is denied.

Rosellini, C. J., Hill, Donworth, Finley, Weaver, Hamilton, and Hale, JJ., concur.

Ott, J. (dissenting)—I dissent for the following reasons:

(1) Article 3, § 12, of the state constitution, provides that "Every act which shall have passed the legislature shall be, before it becomes a law, presented to the governor."

It is conceded that House Bill No. 714 is an act which "passed the legislature." It was not presented to the Governor. In holding that art. 3, § 12, applies to all legislative acts except referred acts, the majority read into the constitution an exception which the framers of the constitution did not see fit to include.

(2) Amendment 7 of the state constitution expressly provides that a referendum act be enacted *"by the legislature as other bills are enacted."* (Italics mine.) In order to follow the constitutional provision for the enactment of *any* bill, it must be presented to the Governor. Const. art. 3, § 12.

To hold as stated in the majority opinion requires that the quoted clause of Amendment 7 be deleted, and substantially the following words inserted in lieu thereof: "When passed by the House and Senate, *a referendum act shall be presented directly to the secretary of state* to be placed upon the ballot for approval or rejection by the people."

(3) Amendment 7 is clear in its mandate that, after the people have voted favorably on a referred act which has been *constitutionally* presented to them, the Governor shall not have the power of veto.

Finally, if the legislature, in passing Amendment 7, had intended that a referendum could be referred to the people for approval or rejection by a majority vote of both the House and Senate, without presenting it to the Governor, such an intent could easily have been expressed in Amendment 7 when it was submitted by the legislature to the people. I cannot find an intent to bypass presentation to the Governor expressed in the words "[passed] *by the legislature as other bills are enacted."* (Italics mine.)

For the reasons stated, House Bill No. 714 was not constitutionally enacted, and the writ of mandate should issue.