PEOPLE v. LICAVOLI.

CONSTITUTIONAL LAW—"DUE PROCESS" CLAUSE—STATUTES.

Section 167, Act No. 328, Pub. Acts 1931, providing that "Any person who engages in an illegal occupation or business * * * shall be deemed a disorderly person;" and that "proof of recent reputation for engaging in an illegal occupation or business shall be *prima facie* evidence of being engaged in an illegal occupation or business," is construed as constituting such proof of reputation *prima facie* evidence of guilt, and, so construed, is *held*, to be in violation of "due process" clause of State Constitution (article 2, § 16), and therefore void. WEADOCK, SHARPE, and NORTH, JJ., dissenting.

Appeal from Recorder's Court of Detroit; Brennan (John V.), J.   Submitted October 10, 1933. (Calendar No. 37,488.)   Decided October 19, 1933.

James Licavoli and Joe Bommarito were convicted of being disorderly persons.   On motion for leave to appeal.   Leave granted.

*Edward H. Kennedy,* for appellants.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Chester P. O'Hara* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

WIEST, J.  Defendants were convicted of the crime of being disorderly persons within the meaning of Act No. 328, Pub. Acts 1931, § 167; it being charged that, from March 15 to September 11, 1933, they were engaged in an unlawful occupation and business; in that they had combined and confederated

with others into an illegal combination created for the purpose of conducting illegal business, to wit: violation of the extortion statutes; violations of the statutes governing the carrying of concealed weapons; violations of the robbery statutes, and violations of the murder statutes of the State of Michigan. Upon trial by jury they were convicted and sentenced to imprisonment for 90 days, that being the maximum penalty. The evidence against them consisted, in the main, of unsuccessful prosecutions for various crimes; records showing that Licavoli, in 1925, was fined $100 for carrying concealed weapons, served one year, commencing in June, 1929, for violation of the Federal prohibition law, and in 1930 he was charged with murder and acquitted. Practically the same proof, except imprisonment, was made against Bommarito. Police officers testified that defendants associated with men having the reputation of being murderers, stick-up men, bootleggers, and robbers, and had the reputation of being bootleggers, stick-up men, robbers, and murderers. No overt act was disclosed during the period charged. It is manifest from the record that defendants were convicted on evidence of repute under the following provision of the statute:

"Proof of recent reputation for engaging in an illegal occupation or business shall be *prima facie* evidence of being engaged in an illegal occupation or business."

The question before us at this time is whether that provision accords an accused "due process of law."

Defendants were convicted of having the reputation of engaging in an illegal business or occupation, and, therefore, were guilty, in fact and beyond

a reasonable doubt, of being engaged in an illegal business or occupation. The presumption so declared by the enactment is not a rational deduction or inference from fact to fact, but an arbitrary fiat of the legislature. If proof of reputation for engaging in an illegal occupation or business is constituted *prima facie* evidence of being engaged in an illegal occupation or business, and, without more, establishes guilt, then we are all agreed that the statute is unconstitutional because violative of "due process of law." We are divided, however, upon whether the statute so provides. Mr. Justice North construes the provision to mean "that proof of recent reputation for engaging in an illegal occupation or business is competent proof thereof." I am of the opinion that the statute constitutes such proof of reputation *prima facie* evidence of guilt, and that such was and is its manifest purpose. I cannot read out of the statute the mandate carried by its express terms. It may be that the legislature, in the use of the term *"prima facie* evidence" did not fully comprehend the legal significance thereof, but such, if true, does not call for our correction. We must presume that the lawmakers acted advisedly in the use of legal terms. At any rate, we are supposed to understand the meaning of the term, give it force as employed, if valid in purpose and effect, and deny it the force of law if it is in violation of "due process of law."

The vice in this statute cannot be sterilized by the emasculation proposed by my Brother. Reputation, without regard to verity, is constituted *prima facie* evidence of guilt—not guilt of having such reputation, but guilt of the specified crime. The statute constitutes it a misdemeanor to engage in an illegal business or occupation, and creates repute

or hearsay proof of being so engaged, not merely competent evidence, but *prima facie* evidence of being so engaged, and, without more, guilty of being so engaged. The statute constitutes extra-judicial utterances *prima facie* evidence of the ultimate fact of guilt. This takes no cognizance of the generic and strongest presumption known to the criminal law—that of innocence until guilt is established by competent evidence beyond a reasonable doubt.

But it is said that the statute should be so construed as to permit a jury to accept or reject such evidence. This would take the heart out of the enactment and render it too feeble to operate without substantive evidence. The purpose of the enactment is too plain not to be recognized, and its purpose, manifested by its language, is self-destructive. The statute does not provide for a mere inference from extrinsic, indicatory proof, but constitutes reputation of engaging in an illegal business or occupation sufficient, without more, to convict an accused of the crime of engaging in an illegal business or occupation.

The petty case at bar, and the claimed bad character of defendants, does not cause me to overlook the consequences of judicial sanction of the course of law prescribed by this enactment.

"The constitutionality of a law is determined, not alone by what has been done, but by what may be done, under its provisions." *City of Watertown* v. *Christnacht,* 39 S. D. 290 (164 N. W. 62, L. R. A. 1917 F, 903).

If this enactment is held valid, then a like rule of evidence and inference and *prima facie* presumption of guilt may be made applicable to cases of felony.

Charges of felonious acts, based upon surmise, engendered by ill-will or love of notoriety, may be disseminated and create a reputation by hearsay, and the fact of such reputation, and not the foundation or truth thereof, is all that need appear in court. I cannot yield to an arbitrary rule that reputation of engaging in an illegal business or occupation is a fact and such fact may be shown and constitutes *prima facie* evidence of guilt. Under such a rule of evidence, no man's liberty is safeguarded, for malice, spite, gossip, unfounded accusation, slander and libel, resulting in reputation, will come into court under the guise of a fact, termed reputation, without inquiry as to the utterers or of knowledge had by them, and be solemnly declared *prima facie* evidence of guilt in accord with due process of law. The statement that reputation is a fact and the fact may be proved has been made before.

In *Commonwealth* v. *Stewart,* 1 Serg. & R. (Pa.) 342, it was urged in a prosecution for keeping a disorderly house that the complaint of the neighbors was a matter of fact, and, therefore, when the witness proved the complaint she had only proved a fact within her own knowledge. But the chief justice said:

"I am not satisfied with this ingenious distinction, which gets round and avoids an important rule of evidence. In the same way all hearsay evidence may be introduced, for it is always a fact, that the witness hears the other person speak, and it is a fact that the words spoken by that person were heard by the witness. But what is the consequence of receiving testimony of this kind? The jury are influenced by declarations not made upon oath, and the adverse party is deprived of the benefit of cross-examining the person making those declarations.

\* \* \* It appears to me, that the evidence amounted to no more than the general reputation of a disorderly house, and certainly this is not one of the cases in which general reputation is evidence.''

It must be remembered that defendants are not prosecuted for having a criminal reputation, but for committing a specific crime, wholly independent of any reputation, and the statute constitutes such reputation *prima facie* evidence of their guilt. If reputation were the offense denounced by the statute, then we would have a different question. Defendants were denounced by hearsay and convicted by inference drawn therefrom.

Suppose an enactment like this is made applicable to illegal acts under the banking law, and some person, over the radio, broadcasts accusation of violation and designates and denounces the object of his suspicion, how long would it take to create and fasten the reputation of having committed such an offense? Would it be considered ''due process of law'' not to call the accuser, or even his dupes, but sufficient to establish an illegal and criminal course of conduct by reputation of having engaged in such a course of conduct and constitute such a reputation *prima facie* evidence of guilt?

It was stated in *Hammond* v. *State,* 78 Ohio St. 15 (84 N. E. 416, 15 L. R. A. [N. S.] 906, 125 Am. St. Rep. 684, 14 Ann. Cas. 732), in holding a somewhat similar statute unconstitutional:

''If the general assembly, in order to make conviction easier under this act, can rightfully provide that one of the essential and constituent elements of the crime charged, viz., the unlawful character of the trust or combination, may be shown and made certain, by proof of common rumor, or general reputation, and the guilt of the accused be thus estab-

lished, it is difficult to see why it may not, with equal right, provide that murder, arson, or any other crime, may be thus established by proof that the person accused thereof is generally reputed to be the person who committed the same; a proposition at once so obnoxious and repugnant to the plainest principles of reason and justice, that none would yield assent to it. It is a matter of common and universal knowledge that bad reputation may, and oftentimes does, originate in malice, from mistake, or irresponsible rumor, and once suggested or set going, the rapidity with which such a reputation gathers vigor and volume is proverbial. Hence, as is very fittingly and appropriately said by Durfee, C. J., in *State* v. *Kartz*, 13 R. I. 528, 531:

" 'To introduce into the law the principle that a person can be punished for what other people say about him, is to render all the constitutional safeguards of life, liberty, and property unavailing for his protection; for it is impossible to say to what purposes so pernicious a principle may not be applied if it is once permitted to take root.' "

In *State* v. *Beswick*, 13 R. I. 211 (43 Am. Rep. 26), there was involved an act of the general assembly constituting "the notoriously bad or intemperate character of persons frequenting" certain premises *prima facie* evidence that intoxicating liquors were kept on such premises. The court held the act unconstitutional, and stated:

"Suppose that the general assembly were to enact that if any person were generally reputed to be guilty of a murder it should be *prima facie* evidence that he was guilty, and that some citizen were convicted and sentenced to death or imprisonment on such evidence, because in the absence of rebutting evidence the jury had no option to acquit him. Could it be said that his life or liberty had been taken from him by the judgment of his peers? We think not. The judgment of the jury would not have been taken on the question of his guilt, but only on the question of whether or not he was generally reputed

guilty. So under the statute here a man may be convicted of unlawfully keeping intoxicating liquors for sale, upon proof that his place of business is generally reputed to be a liquor shop, without the jury's actually passing any judgment on the question of his guilt.''

But it is said that defendants were at liberty to rebut the presumption. This but emphasizes the fact that if an accused does not go forward with the proofs the presumption stands, without more, as evidence that he is guilty.

In *State* v. *Lapointe,* 81 N. H. 227 (123 Atl. 692, 31 A. L. R. 1212), this question was evidently presented, for the court stated:

"It is said that so long as the defendant has preserved to him the right to fully present his defense, and then have the evidence weighed, he has nothing to complain of. But the right to make defense is not the whole right secured to one charged with crime. He has also the right to insist that before he can be found guilty there must be substantial evidence upon every fact essential to the establishment of his guilt, and that this evidence shall be weighed by the jury and found sufficient to prove the case. It is his right to decline to produce any evidence and to stand solely upon the proposition that the State must prove a case against him. *   *   *

"The rule of the Constitution is that the defendant in a criminal case cannot be compelled to go forward.

" 'The fact that he is charged with a crime gives him certain special privileges. Among these are the requirement of the State to prove the charge against him beyond a reasonable doubt; the constitutional prohibition of compelling him to accuse or furnish evidence against himself; the right to meet the witnesses against him face to face, and so forth.' *   *   *

"In a criminal prosecution, nonaction of the defendant cannot be substituted for action upon the

part of the State, as to any matter required to be established as a part of the State's case. Neither the burden of proof nor the burden of proceeding with any evidence to prove such case can be imposed upon the party charged with crime.

"Most courts that have sustained these statutes as binding the judgment of the jury have done so upon the theory that all the legislature had undertaken to do was to prescribe a rule of evidence. As already pointed out, this is not the real purpose and effect of the legislation. It seeks to compel a party to go ahead in the case, to produce evidence, or else have the fact found against him as matter of law. It is a rule of procedure, and undertakes to take from the defendant rights guaranteed to him by the Constitution.

"It is herein that these statutes are fatally de fective. By what authority can the legislature impose a burden upon the defendant for not producing evidence? One will search in vain through all the decisions for any answer. No doubt the statute gives the defendant full opportunity to present all the evidence, but that does not help the situation. These statutes were not designed for, and do not apply in, cases where other evidence upon the question is produced. They apply only to cases where there is no evidence save the statutory inference from fact A to fact B, and they say to the jury that the inference is inevitable. You must find fact B if you find that fact A is proved.   *   *   *

"To stress this so-called privilege of the defendant to produce evidence, as so many courts have stressed it, is an entire perversion of the protection guaranteed to him.   *   *   *

"It is his constitutional right not to produce evidence. Were it not for the array of cases denying the substance of this privilege, it would seem incredible that any one could suppose that it could be invaded by any legislation based upon a power to penalize the exercise of the right. Giving to him

the right to produce evidence or not, is no substitute for his right not to produce it. The former is a privilege now generally conferred. But the latter is a fundamental right which neither legislatures nor courts are at liberty to impair. Conferring the privilege to produce cannot limit or in any way affect the constitutional right not to produce."

In my search I have found no such inattention to the guaranty of "due process of law," as evidenced, by this enactment. Cases may be found authorizing *prima facie* presumption of guilt upon relevant indicatory proof, but the enactment under consideration does not provide for a mere presumption from indicatory proof but makes reputation of having engaged in an illegal business or occupation sufficient evidence to convict an accused of the crime of being engaged in an illegal business or occupation. The legislature, in enacting laws, must heed the provisions of the Constitution, for the Constitution is the law of laws, and the courts, in construing legislative enactments, must enforce constitutional provisions.

In *Sarah Way's Case,* 41 Mich. 299, it was said:

"The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert."

In *People* v. *Micalizzi,* 223 Mich. 580, 582, Mr. Justice Fellows, speaking for the court, said:

"We are not concerned with the guilt or the innocence of this defendant. We are concerned with whether his constitutional rights have been invaded. Constitutions were written to be obeyed. Their provisions are mandatory. They protect the humblest as well as the powerful, the meanest as well as the upright."

What is meant by *prima facie* evidence?

In *Purity Ice Cream & Dairy Co.* v. *Adams Express Co.*, 217 Mich. 593, we defined a *prima facie* case as:

"A case made out by proper and sufficient testimony; one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side," citing 31 Cyc. p. 1172.

"*Prima facie* evidence is such as in the judgment of the law is sufficient to establish the fact, and, if unrebutted, remains sufficient for that purpose." *Atlantic Land & Improvement Co.* v. *Lee,* 93 Fla. 579 (112 South. 549).

The same holds true in criminal cases.

"*Prima facie* evidence is that degree of proof which, unexplained or uncontradicted, is alone sufficient to establish the truth of a legal principle asserted by a party." *State* v. *Kline,* 50 Ore. 426, 432 (93 Pac. 237).

In *People* v. *Nemer,* 218 Mich. 163, 166, it was held:

"Reputation is based on the 'speech of people,' 'what people say of a man.'"

The term "reputation" in the statute specially refers to criminal activity in the particular alleged in the complaint, and the legislature evidently intended the term "reputation" to apply to the common opinion, or that in which there is general concurrence—in other words, general reputation or character attributed. Such evidence is eminently a matter of hearsay.

It is urged that an emergency exists, and the end in view justifies the means provided by this statute.

Like justifying of tyranny has left its sinister blot upon the pages of history and the lesson taught has led to constitutional provisions intended to withstand recurrence thereof.

The Constitution of this State, article 2, § 16, provides:

"No person shall  *  *  *  be deprived of life, liberty, or property, without due process of law."

In *People* v. *Dickerson,* 164 Mich. 148 (33 L. R. A. [N. S.] 917, Ann. Cas. 1912 B, 688), the court said of this provision:

"From an examination of the authorities, it is apparent that this constitutional guaranty simply preserves to the people rights which had existed for centuries, and which had been enjoyed according to the course of the common law. It means such an exercise of governmental power as is sanctioned by settled maxims of law, under such safeguards for the protection of individual rights as those maxims prescribed."

The court quoted, with approval, the definition of "due process of law," given by Daniel Webster, in the *Dartmouth College Case,* 4 Wheat. (17 U. S.) 518, 581. No better definition can be found and we again quote it:

"By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

In the *Dickerson Case* it was also stated:

"It becomes pertinent, therefore, to ascertain what settled maxims, and safeguards—what. 'general rules which govern society'—are applicable to a criminal prosecution such as is here under consideration.''

The court held unconstitutional an act authorizing the trial court, in murder cases, to select expert witnesses.

In the case at bar the statute selects one instance, denounced as a misdemeanor, strikes down two rights which had existed for centuries, both sanctioned by settled maxims and the settled course of the common law. The statute dignifies into legal proof of guilt evidence of reputation that an accused has offended by engaging in an illegal occupation or business. The legislature may not declare reputation *prima facie* evidence that an accused has committed a crime without showing that a crime has, in fact, been committed. This act relieves the prosecution from establishing guilt of an accused beyond a reasonable doubt, for, unless the accused enters upon a defense, the *prima facie* presumption authorizes a conviction, and his right to the presumption of innocence, which is the most universal and strongest presumption known to law, is accorded no place for consideration.

The statute brings conflict of presumptions. The statute creates *prima facie* evidence of guilt out of proof of reputation.

American law accords an accused the presumption of innocence, and due process of law requires that, before a conviction be had, this presumption must be removed by evidence establishing guilt beyond a reasonable doubt.

" 'Due process of law' does not mean 'the general body of the law, common and statute, as it was at

the time the Constitution took effect; for that would deny to the legislature the power to change or amend the law in any particular. Neither, on the other hand, does ''the law of the land'' or ''due process of law'' mean anything which the legislature may see fit to declare to be such; for there are certain fundamental rights, which our system of jurisprudence has always recognized, which not even the legislature can disregard in proceedings by which a person is deprived of life, liberty or property. * * * Although the legislature may at its pleasure provide new remedies or change old ones, the power is nevertheless subject to the condition that it cannot remove certain ancient landmarks, or take away certain fundamental rights which have been always recognized and observed in judicial procedures.' When the law of the land is spoken of, 'undoubtedly a pre-existing rule of conduct' is intended, 'not an *ex post facto* rescript or decree made for the occasion. The design' is 'to exclude arbitrary power from every branch of the government; and there would be no exclusion if such rescripts or decrees were to take effect in the form of a statute.' '' 2 Cooley's Constitutional Limitations (8th Ed.), p. 737.

''Due process of law'' is from the Roman Maxims and the re-affirmation of this in Magna Charta. *Hurtado* v. *California,* 110 U. S. 516 (4 Sup. Ct. 111).

The enactment in question is unconstitutional.

The appeal is allowed, and defendants admitted to bail.

McDONALD, C. J., and POTTER and BUTZEL, JJ., concurred with WIEST, J. FEAD, J., concurred in the result.

NORTH, J. (*dissenting*). In the recorder's court of Detroit defendants were convicted on a charge

of being disorderly persons. They petitioned this
court for leave to appeal. Incident to their peti-
tion the question of the constitutionality of the stat-
utory provision under which they were convicted
was raised. This was deemed to be of such impor-
tance that the court requested counsel for the re-
spective parties to present the matter. It has been
briefed and orally argued. While other questions
are presented incident to the application for leave
to appeal, the sole question now under consideration
is the constitutionality of that part of section 167,
Act No. 328, Pub. Acts 1931, under which plaintiffs
were convicted, and which reads:

"Any person who engages in an illegal occupation
or business * * * shall be deemed a disorderly
person. Proof of recent reputation for engaging in
an illegal occupation or business shall be *prima facie*
evidence of being engaged in an illegal occupation
or business."

Defendants state in their brief:

"It is our contention that this provision of the
statute (the last sentence above quoted) is uncon-
stitutional and void in that it prescribes a rule of
evidence which is violative of the constitutional
guaranty contained in article 14, § 1, of the Con-
stitution of the United States, that no person shall
be deprived of life, liberty, or property without due
process of law."

There is no doubt of the power of the legislature
to enact rules of evidence provided such rules do
not conflict with the Constitution or invade rights
guaranteed by the Constitution. But such rules of
evidence may not be arbitrary, illogical, or capri-
cious. Instead, the conclusion drawn from the evi-
dentiary facts shown must be justifiable in reason,

It must be a rational conclusion. Otherwise the rule of evidence is arbitrary in character.

"The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. A law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law. It would not be possible to uphold a law which made an act *prima facie* evidence of crime over which the party charged had no control and with which he had no connection, or which made that *prima facie* evidence of crime which had no relation to a criminal act and no tendency whatever by itself to prove a criminal act. But so long as the legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds." *Board of Excise Commissioners of Auburn* v. *Merchant,* 103 N. Y. 143 (8 N. E. 484, 57 Am. Rep. 705).

As was said by Mr. Justice Butler in *Manley* v. *Georgia,* 279 U. S. 1 (49 Sup. Ct. 215):

"State legislation declaring that proof of one fact or a group of facts shall constitute *prima facie* evidence of the main or ultimate fact in issue is valid *if there is a rational connection between what is proved and what is to be inferred.* If the presumption is not unreasonable and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process of law."

Obviously in the above-quoted statute the legislature sought to embody a valid rule of evidence. Its validity is to be presumed. *In re Harrand,* 254

Mich. 584. All doubts are to be resolved in favor of the validity of the statute. *Attorney General* v. *Railway,* 210 Mich. 227. If the enactment is subject to two constructions, one of which renders it valid while the other renders it invalid, the former, not the latter, construction is to be given. *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859). An investigation of judicial decisions involving similar statutory provisions reveals at once that in some decisions a different scope and meaning has been given to the expression "*prima facie* evidence" than in others. If, as I believe, the meaning adopted in some decisions would render the statutory enactment unconstitutional, while that adopted in others would sustain it, then the latter construction should be accepted, because it is to be presumed that the legislature so intended.

As construed by some courts, the expression "*prima facie* evidence" of an act or conduct which is forbidden by the statute means that in the absence of refuting testimony the statutory "*prima facie* evidence" establishes the guilt of the accused beyond a reasonable doubt. This in criminal cases would seem to arbitrarily deprive defendant by legislative fiat of the presumption of innocence and in effect cast upon him the burden of disproving his guilt. Admittedly the very terms of the statute so construed fix a measure of credence which the jury must give to the so-called "*prima facie* evidence." So construed, it is proof beyond a reasonable doubt. This is an invasion of the province of the jury, and deprives the defendant of his constitutional right to trial by jury. The following cases are of this type:

"*Prima facie* evidence is that degree of proof which, unexplained or uncontradicted, is alone suffi-

cient to establish the truth of a legal principle asserted by a party: 1 Jones, Evidence, § 7." *State* v. *Kline,* 50 Ore. 426, 432 (93 Pac. 237).

"*Prima facie* evidence we understand to be evidence which, standing alone and unexplained, would * * * warrant the conclusion to support which it is introduced." *State* v. *Lawlor,* 28 Minn. 216, 223 (9 N. W. 698).

In *Hammond* v. *State,* 78 Ohio St. 15 (84 N. E. 416, 15 L. R. A. [N. S.] 906, 125 Am. St. Rep. 684, 14 Ann. Cas. 732), a case upon which these defendants rely, the accused was charged with entering into a conspiracy in restraint of trade. Prosecution was under a statute wherein it was provided:

"The character of the trust or combination alleged may be established by proof of its general reputation."

Here, also, the court construed the statutory provision as meaning that the character of the trust or combination might be made certain by proof of reputation alone, and for that reason held it invalid. The court said:

"To concede to the legislature the power to provide, in prosecutions under the act here in question, that the unlawful character of the combination to which the defendant belongs may be established— that is, made certain—by proof of its general reputation as such, is to grant that the legislature has power to, and may, in a criminal case, prescribe a rule of conclusive evidence as to a vital and controlling fact, that shall be binding alike upon court and jury."

It must be conceded that if the statute "prescribes a rule of conclusive evidence" in criminal cases, it is invalid for the reasons pointed out in the *Hammond Case.* If the words "*prima facie*

evidence," as used in the statutory provision involved in the instant prosecution were to be so construed, I would be disposed to agree that it violated defendants' constitutional right to a trial by jury, and that they were thus deprived of liberty without due process of law.

But there is much respectable authority holding that, as used in this statute, "*prima facie* evidence" means no more than that the evidence is competent; and, as pointed out in some decisions, it neither compels the defendant to take the witness stand nor to produce rebutting testimony. Instead, he may always present to the jury his contention that his guilt is not by such "*prima facie* evidence" established beyond a reasonable doubt.

"Construing section 7614, Rev. Codes 1899, which makes the fact that one has or keeps posted in or about his place of business a United States revenue receipt or license for the sale of distilled malt or fermented liquors *prima facie* evidence that he is selling and keeping for sale intoxicating liquor contrary to law, it is held, *that by prima facie evidence is meant competent evidence,* and evidence which is legally sufficient to justify the jury in finding the fact of unlawful sales, *provided it satisfies them beyond a reasonable doubt, but not otherwise.*" State v. *Momberg* (syllabus), 14 N. D. 291 (103 N. W. 566).

"Where a statute, such as section 3, chap. 15, of the 1911 Session Laws (1911 Sess. Laws, p. 32), provides that when the possession of intoxicating liquors is shown, such fact is '*prima facie* evidence that such intoxicating liquors are kept for sale,' the statute means that such *prima facie* presumption or *prima facie* evidence is sufficient to go to the jury to prove such facts, and that such possession will be sufficient to support a verdict on that particular fact; but it does not mean that such evidence is

conclusive and binding upon the jury, and that it is their duty to bring in a verdict against the defendant where such a *prima facie* case only is made, and it is error to instruct a jury that under such circumstances they should bring in a verdict of guilty." *State* v. *Adams* (syllabus), 22 Idaho, 485 (126 Pac. 401).

"The provision of the local option law of 1907, making the United States internal revenue stamp or receipt *prima facie* evidence of a sale of intoxicating liquor, by the person to whom it is issued, at his place of business where the stamp or receipt is posted, merely establishes a rule of evidence, and does not change the fundamental rule as to the burden of proof and *quantum* of evidence necessary to a conviction in a criminal case." *People* v. *McBride* (syllabus), 234 Ill. 146 (84 N. E. 865, 123 Am. St. Rep. 82, 14 Ann. Cas. 994).

"We have many similar statutes, in some of which the words used are '*prima facie* evidence,' and in others the words are 'presumptive evidence.' We cannot doubt that these phrases are intended to convey the same idea. * * * They mean that such evidence is competent and sufficient to justify a jury in finding a defendant guilty, provided it does, in fact, satisfy them of his guilt beyond a reasonable doubt, and not otherwise. It would not be just to the members of the legislature to suppose that, by any of these enactments, they intended to make it obligatory upon the jury to find a defendant guilty, whether they believe him to be so or not. It is a well-settled rule of construction that, if a statute is susceptible of two interpretations, and one of the interpretations will render the statute unconstitutional and the other will not, the latter should be adopted." *State* v. *Intoxicating Liquors,* 80 Me. 57, 61 (12 Atl. 794).

In a note appended to the report of *State* v. *Brady* (121 Iowa, 561 [97 N. W. 62]), in 12 L. R. A. [N. S.] 199, 205, it is said:

"The difference existing between the Iowa cases is explained in *State* v. *Brady,* where an attempt is made to define '*prima facie* evidence' and 'presumption of guilt,' by saying that the accused is not required 'to overcome the presumption thereby raised' in order to be entitled to an acquittal. What the law does say is that the fact of possession is evidence of guilt, upon which a conviction may properly be returned, unless a doubt, etc., exists. This is the correct rule, but, unfortunately, the failure to discern it has caused great confusion."

In this State many instances may be cited where by statutory enactment proof of something other than the direct act charged constitutes *prima facie* evidence in prosecutions for violations of the statute. The following are examples taken at random: Prefixing the word doctor or its abbreviations to one's name is *prima facie* evidence of practicing medicine (2 Comp. Laws 1929, § 6745); possession of the carcass or skin or any portion thereof of a protected animal out of season is *prima facie* evidence of the unlawful killing of the animal by such possessor (2 Comp. Laws 1929, § 6221); prohibited appliance for use in fishing found in a boat house on the shore of a lake is *prima facie* evidence of its use in violation of the statute (2 Comp. Laws 1929, § 6380); possession of policy or pool books is *prima facie* evidence of their use by the possessor in the form of gaming prohibited (Act No. 328, Pub. Acts 1931, § 306); and likewise possession of unstamped boots or shoes showing the use of imitation leather, if such is the fact, is *prima facie* evidence

of intent to sell the same (Act No. 328, Pub. Acts 1931, § 290). The validity of these and many other like statutory provisions can be sustained only on the ground that *prima facie* evidence means competent evidence and nothing more.

It is urged that the provision in the statutory enactment now under consideration in making reputation *"prima facie* evidence*"* is invalid because reputation is necessarily hearsay. On this ground effort is made to distinguish this statutory provision from those which provide that proof of specific related facts constitute *prima facie* evidence. This position seems untenable. To be sure reputation is the culmination of hearsay. Nonetheless reputation, good or bad, is a fact.

"An existing reputation is a *fact* to which any one may testify who knows it; he knows it because he hears it, and what he hears constitutes the reputation." *Bathrick* v. *Detroit Post & Tribune Co.,* 50 Mich. 629, 642 (45 Am. Rep. 63).

In the regular course of events reputation results from one's course of conduct in life. Good reputation is an asset of him who possesses it. It is protected by the Constitution as such. *Park* v. *Detroit Free Press Co.,* 72 Mich. 560 (1 L. R. A. 599, 16 Am. St. Rep. 544). If one is damaged in his good reputation by slander or libel, the law affords him a remedy. In such litigation, whether one is possessed of a good reputation becomes an issue of fact, provable by competent testimony the same as any other fact. Thus it would seem the presumption or *prima facie* evidence provided for in this statute arises from and requires proof of a fact. This statutory rule of evidence is not faulty on the ground that the ultimate fact is established by hearsay. It is also asserted that proof of reputation as tending

to establish the guilt of an accused is at best a weak and inferior type of proof. Even so, this circumstance only results in minimizing the probative force of the testimony. It does not go to its competency or admissibility.

The rule of evidence embodied in this statutory enactment is not defective on the ground that there is lack of rational connection between the offense charged and the fact or facts declared to be *prima facie* evidence. As hereinbefore noted, one's reputation ordinarily is the result of his own course of conduct in life. Rarely, if ever, does one acquire a reputation of being engaged in unlawful business except there is some foundation in fact therefor. It may be admitted that the misfortune of having a bad reputation sometimes arises from circumstances beyond the control of its victim. And it is true that a bad reputation may have originated in malice or even in mistake, but bad reputations are not ordinarily so acquired; and in this regard this type of testimony differs little, if at all, from direct testimony on any controverted issue of fact. Witnesses in giving direct testimony may- be prompted by malice to misrepresent or distort, and often they may deviate from truth through mistake or prejudice. In every instance the triers of the fact must weigh the testimony in the light of these circumstances so far as they are disclosed.

It is elementary that, as to a defendant who testifies or any of his witnesses, impeachment may be effected by proof of a bad reputation for truth and veracity, and thereby the defense offered may be weakened or even destroyed. Likewise, if the credibility of the people's witnesses is so attacked, they may in turn be sustained by proof of good reputation for truth and veracity. It is difficult to com-

prehend the logic of, or justification for, this rule of evidence without conceding, if the legislature sees fit to so provide, that proof of bad reputation of the accused relative to the particular matter with which he is charged has a rational bearing upon the question of his guilt, and is therefore of evidentiary force. Such testimony, to the extent to which it is believed, surely tends to overcome the presumption of innocence, notwithstanding it may be wholly insufficient to establish guilt beyond a reasonable doubt.

It is urged that, if this enactment is sustained, the legislature might proceed to enlarge the scope of this type of legislation by making proof of reputation competent evidence of the commission of any crime. If constitutional, this provision should not be nullified because of indulgence in the presumption that some future legislature may either attempt to exceed its powers in this regard or may enact some unwise legislation. The wisdom of the legislation, if valid, is for the legislature, not for the courts. *Nieminen* v. *Isle Royale Copper Co.*, 214 Mich. 212. A number of the cases cited in defendants' brief do not bear upon the question we are now considering. Instead, they are cases wherein it was held that the particular statutory rule of evidence was invalid because it was arbitrary in that by it the legislature attempted to give evidentiary force to facts and circumstances which had no rational tendency to establish the ultimate fact in issue. We so understand the decision rendered in each of the following cases: *Casey* v. *United States,* 276 U. S. 413 (48 Sup. Ct. 373) ; *Manley* v. *Georgia, supra; Calder* v. *Bull,* 3 Dallas (3 U. S.), 386; *State* v. *Beswick,* 13 R. I. 211 (43 Am. Rep. 26) ; *City of Watertown* v. *Christnacht,* 39 S. D. 290 (164 N. W. 62,

L. R. A. 1917 F, 903). In each of the above cases it might well be said as was said in *Casey* v. *United States, supra:*

"The suggested rational connection between the fact proved and the ultimate fact presumed is imaginary."

The only remaining question is whether it should be held that uncorroborated testimony of recent reputation of engaging in an illegal occupation or business is sufficient to sustain the conviction of one so charged. In this State the trial courts, as well as this court on review, have inherent power to determine whether a verdict of guilty is sustained by the proof. In the exercise of their common-law powers courts may determine whether a particular type of proof, if uncorroborated, is sufficient to sustain conviction. For example, it is a rule of law by judicial determination in this State that an uncorroborated extrajudicial confession is not sufficient. *People* v. *Lane,* 49 Mich. 340; *People* v. *Ranney,* 153 Mich. 293 (19 L. R. A. [N. S.] 443). There are many other decisions of like character. In keeping with such holdings it should be here held that, notwithstanding the statutory rule of evidence now under consideration, proof of recent reputation of engaging in an illegal occupation or business, if uncorroborated, is not sufficient to sustain a conviction. This is in accord with the following cases: *Dick* v. *Commonwealth,* 159 Ky. 761 (169 S. W. 496); *Thomson* v. *State,* 49 Tex. Crim. 384 (97 S. W. 316); *People, ex rel. Wilson,* v. *Flynn,* 72 App. Div. 67 (76 N. Y. Supp. 293). See, also, *State* v. *Eubank,* 33 Wash. 293 (74 Pac. 378). In *People, ex rel. Wilson,* v. *Flynn, supra,* the reason assigned in support of the holding is that in the absence of some cor-

roborating testimony there is no showing of a rational relation between the offense charged and the testimony received under the statutory rule.

Our conclusion is that the quoted statutory provision should be construed to mean that proof of recent reputation for engaging in an illegal occupation or business is competent proof thereof, but is not sufficient to sustain a conviction if uncorroborated by other competent testimony. When so construed, the enactment of the statute is within the constitutional powers of the legislature. For reasons assigned in support of defendants' motion for leave to appeal (but not herein set forth), an appeal is allowed.

WEADOCK and SHARPE, JJ., concurred with NORTH, J.