YOUNG, C.J.
(dissenting). I respectfully dissent from the majority’s interpretation of MCL 324.3109(2). MCL 324.3109(2) prohibits the discharge of raw human sewage *255 into state waters and states that such a discharge “shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated ...The majority interprets MCL 324.3109(2) to mean that a municipality is presumed responsible for a discharge of raw human sewage that originated within its borders, that the municipality may only rebut the presumption of liability by showing that the discharge of raw human sewage was not injurious, and that the municipality may not rebut the presumption of liability by showing that it did not cause the discharge. The majority’s decision thus imposes strict liability on a municipality for every injurious or potentially injurious discharge of raw human sewage that originates within its borders, even if the municipality can conclusively establish that some other entity caused the pollutant discharge.
Therefore, I respectfully dissent and would conclude that the statutory presumption contained in MCL 324.3109(2) may be rebutted when a municipality shows either that the discharge of raw human sewage did not violate part 31 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.3101 et seq., or that it was not in fact the discharging party. Because the documentary evidence from the Department of Environmental Quality (DEQ) indicates that Worth Township is not the actual source of the environmental contamination, and the DEQ in fact concedes that defendant would prevail if permitted to rebut causation, I believe that defendant is entitled to summary disposition of the claim brought under MCL 324.3109(2).
I. ANALYSIS
MCL 324.3109(2) contains a presumption that provides a basis for holding municipalities liable for discharges of raw human sewage:
*256 The discharge of any raw sewage of human origin, directly or indirectly, into any waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated ....
“ ‘Prima facie evidence is such as in the judgment of the law is sufficient to establish the fact, and, if unrebutted, remains sufficient for that purpose.’ ”[1] Therefore, if there has been a discharge of raw human sewage into state waters, then the municipality in which the discharge originated is presumed to have violated part 31 of NREPA. The question then becomes: How can a municipality rebut that presumption?
A party can rebut a presumption by introducing evidence that refutes the supporting facts or the presumed facts.[1]
[2] The majority concludes that the only way a municipality can rebut the statutory presumption is *257 by “showing that the discharged raw sewage does not rise to the ‘is or may become injurious’ standard” set forth in MCL 324.3109(1), thereby proving that no “violation” of MCL 324.3109(1) actually occurred.[3] However, MCL 324.3109(2) does not merely presume there has been “a violation of this part.” Rather, MCL 324.3109(2) unambiguously presumes there has been “a violation of this part by the municipality. ”[4]
When used as a preposition, the word “by” means “through the agency of” and “as a result or on the basis of[.]”[5] Accordingly, MCL 324.3109(2) presumes that the “violation of this part” occurred as a result of or through the agency of the municipality. This presumption assumes that some action “by the municipality” caused or contributed to the violation. Therefore, under the plain language of MCL 324.3109(2), a municipality may rebut the presumption in one of two ways: it can show either that no violation of part 31 occurred or that the violation occurred, but not as a result of or through the agency of the municipality.
II. THE MAJORITY’S INTERPRETATION OF MCL 324.3109 IS FLAWED
In concluding that a municipality may only rebut the presumption of liability by showing that no violation *258 occurred, the majority’s interpretation of MCL 324.3109(2) severs the phrase “by the municipality” from the phrases “of a violation” and “of this part.” However, the phrase “by the municipality” modifies “of this part,” which in turn modifies “of a violation.” Each subsequent prepositional phrase gives meaning to the preceding phrase, and they cannot be read independently of each other. Thus, the majority errs by concluding that “of this part” is part of the presumption while “by the municipality” is not.
The majority attempts to find meaning in “the surrounding subsections and in the historical context of statutes governing raw-sewage disposal” to support its conclusion that “the municipality is in violation of NREPA when a discharge originates within its boundaries, irrespective of who actually caused the discharge.”[6] What is noticeably absent from the majority’s analysis, however, is an in-depth evaluation of the actual language of MCL 324.3109(2).
The majority dutifully notes that “[t]he words used in the statute are the most reliable indicator of the Legislature’s intent and should be interpreted on the basis of their ordinary meaning”[7] and that “the statutory language must be read and understood in its grammatical context.”[8] While the majority recites these canons of statutory interpretation, it fails to follow them. Rather than focusing on the plain language of MCL 324.3109(2) in its present form, the majority begins its analysis by looking at antecedent versions of the statute that required “municipalities] to oversee the proper disposal of sewage within *259 [their] boundaries . . . .”[9] As the majority implicitly recognizes by citing cases holding that the current language of a statute is the most reliable indicator of a Legislature’s intent, importing the historical obligations of prior versions of a statute is completely inappropriate when the statutory language is clear and unambiguous.[10]
Moreover, even if the language of a prior statute were a proper indication of the meaning of the current version of an unambiguous statute, the prior version of MCL 324.3109(2) undercuts the majority’s analysis. Former MCL 323.6, as amended by 1965 PA 328, provided in part:
(a) It shall be unlawful for any person directly or indirectly to discharge into the waters of the state any substance which is or may become injurious to the public health, safety, or welfare ....
(b) The discharge of any raw sewage of human origin, directly or indirectly into any of the waters of the state shall be considered prima facie evidence of the violation of [former MCL 323.6(a)] unless said discharge shall have been permitted by an order, rule, or regulation of the commission. Any city, village or township which permits, allows or suffers the discharge of such raw sewage of human origin into any of the waters of the state by any of its inhabitants or persons occupying lands from *260 which said raw sewage originates, shall be subject only to the remedies provided for in [former MCL 323.7] [11]
Former MCL 323.6(b) had two sentences. The first sentence created a presumption that a discharge of raw human sewage violated former MCL 323.6(a). Most significantly here, the second sentence patently imposed liability on municipalities when they merely allowed or suffered others within their borders to discharge injurious human sewage into state waters.
When the statute was repealed and recodified in NREPA in 1994,[12] the Legislature removed the sentence that explicitly imposed liability on the municipalities for the actions of others and incorporated it into the rebuttable presumption. In doing so, the Legislature created a scheme in which discharges of raw human sewage are presumed to violate part 31 and be caused by the municipalities in which the discharges occurred. The prior language imposing liability on municipalities is no longer absolute in the current statute; the language that imposed absolute municipal liability in the previous statute has been incorporated into the rebut-table presumption provision of the current statute. Thus, the amended statutory language provides further support for the conclusion that the Legislature abolished municipal liability for merely tolerating the injurious discharges of others and replaced it with a rebuttable presumption of liability regarding causation. The majority opinion ignores not only the actual language of the current statute but also how it retreated from its predecessor’s imposition of strict liability for simply being the locus of a discharge. Both are indications that the majority fails to give the statute the meaning the Legislature intended by its choice of language, especially given that it *261 retreated from language imposing absolute liability in a prior version of the statute.
The majority also errs in its contextual analysis of MCL 324.3109(2). While understanding MCL 324.3109(2) in the context of the other subsections is beneficial and appropriate,[13] the majority’s evaluation of the various subsections is detached from their plain meaning. The majority concludes that if “a municipality is responsible under MCL 324.3109(2) only when the municipality itself causes the discharge, that provision would be rendered virtually meaningless” because it would provide “little more than what is already provided in [MCL 324.3109(1)].”[14]
The majority fails to appreciate the evidentiary significance of a presumption. MCL 324.3109(1) prohibits a person from directly or indirectly discharging an injurious substance into state waters. MCL 324.3109(2) presumes that human sewage is injurious and that its discharge was caused by the municipality in which the discharge occurred. MCL 324.3109(2), therefore, shifts the evidentiary burden and requires the municipality, rather than the DEQ, to prove that the discharge was either not violative of part 31 or not caused by the municipality. While the statutory presumption requires the municipality to refute it in order to avoid the penalties and remedies articulated in MCL 324.3115, the general statutory scheme ultimately requires the DEQ to hold the actual polluters liable. This distinction appears to be deliberate, given that the DEQ is in a superior position to prosecute individual polluters.[15]
*262 The majority also claims that MCL 324.3109(4)[16] and (5)[17] support its interpretation of MCL 324.3109(2). MCL 324.3109(4) and (5) presume that discharges of medical waste and ballast water into state waters are violations of part 31. The majority observes:
[MCL 324.3109(4) and (5)] state that a “responsible person” will be subject to penalties for a discharge, but they do not identify who that party may be. While [MCL 324.3109(2)] contains similar language, it goes a step further by actually identifying the party that will be held responsible for a discharge.[18]
On the basis of this observation, the majority abruptly concludes that the presumptive identification of the responsible party in MCL 324.3109(2) is not rebuttable. The majority reaches this conclusion by assuming that the only material difference between these subsections is the fact that MCL 324.3109(2) identifies who is responsible for the discharges, while MCL 324.3109(4) and (5) imply that the person who actually caused the discharge is responsible. In doing so, the majority seems to import the grammatical structure of MCL *263 324.3109(4) and (5) into MCL 324.3109(2) and thereby interpret MCL 324.3109(2) as if it read:
The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part and subjects the municipality in which the discharge originated to penalties as prescribed in MCL 324.3115.
In fact, the phrase “by the municipality” in MCL 324.3109(2) modifies “prima facie evidence of a violation of this part.” Accordingly, the phrase “by the municipality” is part of the presumed fact and is subject to rebuttal by production of contradictory evidence. It is the majority’s failure to recognize this critical grammatical fact that renders its construction fatally flawed.
MCL 324.3109(3) lends additional support to the conclusion that causation is incorporated into the rebuttable presumption. MCL 324.3109(3) provides:
Notwithstanding subsection (2), a municipality is not responsible or subject to the remedies provided in [MCL 324.3115] for an unauthorized discharge from a sewerage system as defined in [MCL 324.4101] that is permitted under this part and owned by a party other than the municipality, unless the municipality has accepted responsibility in writing for the sewerage system and, with respect to the civil fine and penalty under [MCL 324.3115], the municipality has been notified in writing by the [DEQ] of its responsibility for the sewerage system.[19]
MCL 324.3109(3) creates an exception to MCL 324.3109(2). In situations in which there has been an unauthorized discharge from a certain type of sewer within a municipality, the municipality is liable if it agreed to be responsible for the system, even if the municipality can establish that it did not cause the *264 discharge. Moreover, the municipality is subject to the civil fines and penalties enumerated in MCL 324.3115 if it received proper notice from the DEQ. If MCL 324.3109(3) did not exist, a discharge from the sewer system would “be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated” pursuant to MCL 324.3109(2) and the municipality could rebut its presumed liability by showing that it did not cause the discharge.
The Court of Appeals held that MCL 324.3109(2) “merely creates the presumption that... a discharge [of raw human sewage] originated with the municipality.”[20] The Court of Appeals held that a municipality could rebut this presumption by showing that the municipality did not cause the discharge. The Court of Appeals reasoned that “ [i]f the purpose of subsection (2) were to impose liability on a municipality merely because a discharge occurred within its boundaries, then subsection (3) would be contradictory.”[21]
In critiquing the Court of Appeals’ analysis, the majority states that MCL 324.3109(3) “creates an exception to subsection (2) under which a municipality will not be responsible for a discharge originating within the municipality’s boundaries. The exception is that a municipality will not be responsible for a discharge from a sewerage system that the municipality does not own.”[22] The majority reasons that because there is no sewerage system in Worth Township, MCL 324.3109(3) is inapplicable and the Court of Appeals should not have relied on it.
*265 The problem with the majority’s analysis is that it ignores the second half of MCL 324.3109(3).[23] The majority seems to assume that the sole purpose of MCL 324.3109(3) is to create one specific circumstance in which the presumption does not arise: when the discharge is caused by a private sewer. If the second half of MCL 324.3109(3) did not exist, I would agree with the majority. This, obviously, is not the case. The second half of MCL 324.3109(3) imposes liability on the municipality for a discharge it did not cause — but only if it has accepted responsibility in writing and been notified of its responsibility.
A brief illustration may clarify my interpretation of MCL 324.3109(3). Suppose a private entity owns a sewerage system as defined in MCL 324.4101 and there is an unauthorized discharge from that system. If the discharge was of raw human sewage, the municipality in which the discharge occurred is presumed liable under MCL 324.3109(2). However, the municipality could rebut this presumption and avoid liability by showing that it did not cause the discharge. In the absence of MCL 324.3109(3), this would be the end of the matter for the municipality. However, MCL 324.3109(3) continues to impose liability on the municipality notwithstanding its ability to rebut the presumption of MCL 324.3109(2) if the municipality had accepted responsibility in writing for the sewerage system and been notified in writing by the DEQ of its responsibility. Therefore, interpreting MCL 324.3109(2) to mean that a municipality can rebut the presumption created by that subsection by showing that the dis *266 charge was not injurious or that it was not the actual discharging party is perfectly consistent with MCL 324.3109(3), and the majority errs by concluding otherwise.
In its response to this opinion, the majority recognizes:
[T]he actual “discharge” itself constitutes the subject of the first clause of the first sentence of [MCL 324.3109(2)] and is not modified by the language “by the municipality.” Rather, “by the municipality” modifies “prima facie evidence of a violation of this part.” Thus, a discharge under subsection (2) constitutes “prima facie evidence of a violation of this part” by the municipality. It is the “violation” that is attributed to the municipality, not the discharge.[24]
This analysis renders the majority’s position internally inconsistent. The majority seems to imply that “by the municipality” is not part of the rebuttable presumption because that phrase does not modify “discharge.” However, if the majority’s implication were correct, then “of a violation” would also not be part of the presumption because that phrase, like “by the municipality,” modifies “prima facie evidence” and not “discharge.” This cannot be.
The presumption takes effect whenever there is a “discharge of any raw sewage of human origin” and shifts the evidentiary burden to the municipality. The dispute between the majority and this dissent is not whether “by the municipality” modifies “discharge,” but whether the word “by” means that its object — “the municipality” — actually caused its antecedent — “a violation.” As explained earlier, the ordinary meaning of the word “by” contains this causal requirement: “through the agency of” and “as a result or on the basis *267 of[.]”[25] If the municipality fails to rebut the presumption that it caused the discharge, then I agree with the majority that the “ ‘violation’... is attributed to the municipality . . . .”[26] However, because the majority would always subject the municipality to liability for an injurious discharge, even when the municipality proves that it did not cause the violation, it is the majority’s interpretation that fails to take full account of the meaning of the word “by” and its causal meaning in relation to the evidentiary presumption.
III. CONSEQUENCES OF THE MAJORITY’S INTERPRETATION OF MCL 324.3109
The majority’s interpretation of MCL 324.3109(2) renders a municipality strictly liable for the actions of others, even if the municipality has proffered evidence that conclusively establishes the identity of the polluter. Holding a municipality strictly liable for the actions of others is an extraordinary measure, especially when strict liability is not expressly provided by the language of the statute.
One example will suffice to show the broad implications of the majority’s interpretation. Suppose that a portable toilet company regularly, but surreptitiously, dumps its collected human waste into state waters within a township and the township can conclusively establish that the company, and not the township, caused the discharges. Under the majority’s interpretation of MCL 324.3109(2), the township may not avoid liability for the actions of polluters who are under an independent statutory obligation to refrain from discharging waste into state waters. Thus, under the majority’s interpretation, the underlying municipality *268 is always responsible for every injurious discharge of human waste into state waters, even though individuals actually responsible for the discharges have themselves violated MCL 324.3109(1) and are liable for the penalties provided by law. While the Legislature may be within its authority to enact this dual imposition of liability (as it apparently did in the predecessor version of this statute), there is no indication in the text of MCL 324.3109(2) that it intended to do so merely by imposing a rebuttable presumption that makes it easier for the DEQ to hold somebody else responsible for the violation.
The majority concludes that imposing strict liability on municipalities for discharges caused by others is not onerous because “a municipality deemed responsible under [MCL 324.3109(2)] is only required to restrain a violation and comply with the provisions of part 31 of NREPA.”[27] Imposing, as the majority opinion does, a requirement that a municipality such as Worth Township stop others from polluting state waters is not inconsequential. While a municipality may have the statutory authority to stop pollutant discharges,[28] a municipality may not readily possess the resources to halt illegal discharges and ensure compliance. Condemnation is not a cost-free remedy, and local ordinances designed to prohibit unlawful discharges may be no more effective than the state law that was obviously violated in this case. Further, MCL 324.3115(1) requires the imposition of a “fine of not less than $2,500.00” and gives circuit courts the authority to impose attorney fees and costs when there has been a violation of part *269 31.[29] Because the majority reads MCL 324.3109(2) as imposing strict liability on the municipality for any injurious discharge of human waste into state waters that originates within its borders, the municipality is liable for this mandatory fine even when the municipality ensures subsequent compliance with part 31 of NREPA. Thus, the majority’s unwarranted expansion of liability to municipalities will subject municipalities to mandatory statutory penalties even when municipalities take active measures to stop pollutant discharges.
IV CONCLUSION
There is a saying that “[h]e who chooses the beginning of a road chooses the place it leads to. It is the means that determine the end.”[30] The majority erroneously chooses to begin its analysis with an examination of the historical context of MCL 324.3109 rather than the plain and unambiguous language of the statute. The majority’s analytical approach leads it to conclude that a municipality without a proper permit is liable for every injurious or potentially injurious discharge of raw human sewage that originates within its borders, even when it can be shown that the municipality was not the cause of the environmental contamination. Accordingly, the majority’s interpretation imposes strict liability on municipalities that I believe is unsupported by the text of the statute.
In this case, the DEQ submitted documentary evidence that private residences and commercial buildings in Worth Township were discharging raw human sew *270 age into state waters. Pursuant to MCL 324.3109(2), these discharges were prima facie evidence of a violation of part 31. However, Worth Township challenged the claim that the violation occurred “by the municipality,” arguing that the discharges did not occur as a result of its actions, but were caused by the private residences and commercial buildings, as indicated in the DEQ’s documentation. In fact, at oral argument, the DEQ’s counsel admitted that if Worth Township were permitted to rebut the statutory presumption by showing that the discharges were “caused by failing private septic systems,” then Worth Township should prevail. In light of the DEQ’s evidence and the Attorney General’s concession, I do not believe that a genuine issue of material fact exists regarding whether Worth Township is liable pursuant to MCL 324.3109(2).
Because the majority fails to give meaning to the plain and unambiguous language of MCL 324.3109(2), I dissent. I would reverse the Court of Appeals’ decision in part[31] and remand this case to the circuit court to determine whether there is a basis to impose liability under the DEQ’s alternative theory of liability pursuant to MCL 324.3112.

 People v Licavoli, 264 Mich 643, 653; 250 NW 520 (1933), quoting Atlantic Land & Improvement Co v Lee, 93 Fla 579, 584; 112 So 549 (1927). Likewise, Black’s Law Dictionary defines “prima facie evidence” as “[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.” Black’s Law Dictionary (9th ed), pp 638-639.

 See MRE 301:
In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
See also Reed v Breton, 475 Mich 531, 539; 718 NW2d 770 (2006) (recognizing that MRE 301 sets forth the general rule regarding presumptions and that “the usual standard required to overcome a rebuttable presumption [is] competent and credible evidence”); P R Post Corp v Maryland Cas Co, 403 Mich 543, 552; 271 NW2d 521 (1978) (stating that “[t]he legal effect of the admission of prima facie evidence is to shift the burden of proceeding to the party calling the evidence into question,” who must then “come forward with evidence to rebut or contradict its liability....”); Licavoli, 264 Mich at 653 (“ ‘Prima facie evidence is such as in the judgment of the law is *257 sufficient to establish the fact, and, if unrebutted, remains sufficient for that purpose.’ ”), quoting Lee, 93 Fla at 584 (emphasis added).

 Ante at 247. The majority’s brief discussion of how a municipality can rebut the presumption demonstrates that it assumes that failure to comply with MCL 324.3109(1) is the only way a municipality can violate part 31. However, a municipality can violate part 31 in multiple ways. For example, MCL 324.3112 prohibits municipalities from discharging waste effluent without a permit. Therefore, the method by which a municipality can show that there has not been a violation of part 31 in order to refute the presumption of its liability should depend on the DEQ’s underlying theory of liability. The majority opinion does not seem to recognize this fact.

 Emphasis added.

 Random House Webster’s College Dictionary (2000), defs 10 and 12.

 Ante at 241.

 Ante at 237-238.

 Ante at 238.

 Ante at 241.

 See People v Gardner, 482 Mich 41, 65-66; 753 NW2d 78 (2008) (holding that when interpreting a statute, courts should look to the “statute’s plain language” and that “to whatever extent courts correctly divined past legislatures’ intents using previously enacted language, those intents should not guide our interpretation of the unambiguous language of the current versions of the statutes; the acts of past legislatures do not bind the power of successive legislatures to enact, amend, or repeal legislation”), citing Studier v Mich Pub Sch Employees’ Retirement Bd, 472 Mich 642, 660; 698 NW2d 350 (2005).

11 Emphasis added.

 MCL 324.90101(1).

 See Macomb Co Prosecutor v Murphy, 464 Mich 149, 159-160; 627 NW2d 247 (2001).

 Ante at 242-243.

 As seen in this case, the DEQ employs personnel capable of investigating pollutant discharges. Moreover, the DEQ has the statutory authority to request that the Attorney General commence a civil action to enforce part 31. MCL 324.3115(1).

 MCL 324.3109(4) provides:
Unless authorized by a permit, order, or rule of the [DEQ], the discharge into the waters of this state of any medical waste, as defined in part 138 of the public health code, 1978 PA 368, MCL 333.13801 to 333.13831, is prima facie evidence of a violation of this part and subjects the responsible person to the penalties prescribed in [MCL 324.3115]. [Emphasis added.]

 MCL 324.3109(5) provides:
Beginning January 1, 2007, unless a discharge is authorized by a permit, order, or rule of the [DEQ], the discharge into the waters of this state from an oceangoing vessel of any ballast water is prima facie evidence of a violation of this part and subjects the responsible person to the penalties prescribed in [MCL 324.3115]. [Emphasis added.]

18 Ante at 245.

19 Emphasis added.

 Dep’t of Environmental Quality v Worth Twp, 289 Mich App at 414, 424; 808 NW2d 260 (2010).

 Id. at 420.

 Ante at 246.

 For purposes of this discussion, I refer to everything before “unless the municipality has accepted responsibility” as the first half of MCL 324.3109(3) and everything from that phrase on as the second half of MCL 324.3109(3).

24 Ante at 252.

 Random, House Webster’s College Dictionary (2000), defs 10 and 12.

 Ante at 252.

 Ante at 254.

 As the majority recognizes, townships have the authority to condemn individual properties that are injurious to public health. MCL 41.411(3). Further, townships have the authority to adopt ordinances that regulate the public health, safety, and general welfare. MCL 41.181(1).

 Indeed, the fine imposed hy the circuit court may be up to “$25,000.00 per day of violation” pursuant to MCL 324.3115(l)(a).

 Fosdiek, Living Under Tension (New York: Harper & Brothers, 1941), p 111.

 While the Court of Appeals correctly held that a municipality could rebut the statutory presumption by showing that it did not cause the discharges, the panel failed to recognize that the presumption could also be rebutted by showing that the discharges did not constitute a violation of part 31.